## Richmond.

### WILLIAMS AND ALS v. LORD & ROBINSON AND ALS.

#### March 24.

1. The first section of the act of April 4th, 1877, entitled an act securing to married women, on conditions, all property acquired by them before or after marriage (Acts of 1876–77, ch. 329), secures a separate estate in the woman in the property owned by her at the time of her marriage, and the rents, issues and profits thereof ; and also in the property acquired by her during marriage as a separate and sole trader. And the second section of said act secures to her such separate estate in all property acquired by her after and during marriage, whether by gift, grant, purchase, inheritance, devise, or bequest.

2. W, a merchant, conveys his stock of goods in trust for the benefit of such of his creditors as shall accept the deed in a prescribed time. A few of the creditors accept the deed, but other creditors refuse. The creditors who accept the deed sell their claims to the wife of W, and she buys some goods and opens a store. Whether or not she may claim to hold the money she receives under her contract as a separate trader free from the claims of her husband's creditors, under the first section of said act, she is entitled under the second section of said act to all the benefits of her said contract, and to hold the same free from the claims of her husband's creditors.

3. What provisions of a deed of trust directing the mode in which the trustee shall proceed to dispose of the trust property and wind up the trust, do not render the deed fraudulent on its face.

4. The provisions of a mortgage or deed of trust may be of such a character as of themselves to furnish conclusive evidence of a fraudulent intent ; but the presumption of law is in favor of honesty, and the court cannot presume fraud unless the terms of the instrument preclude any other inference.

In 1878–79 Richmond H. Williams was a merchant carrying on retail business at West Point, in the county of King William. He seems to have purchased his goods in

the city of Baltimore. He had become indebted to a number of merchants in that city; and some of his creditors instituted actions against him, on which judgments would be rendered at the April term of the court, 1879. By deed bearing date the 25th of March, 1879, between Williams, of the one part, and A. G. Ware, as trustee for such of his creditors as should, within thirty days from the date of the deed, file with said Ware, trustee, their acceptance in writing of the provisions of the deed, in consideration of the indebtedness of said Richmond H. Williams to the following named parties or so many of them as should accept the deed in the mode stated—naming all of his creditors—granted to said Ware, as trustee aforesaid, all the stock of goods then in the storehouse occupied by him in conducting the mercantile business in the town of West Point, Virginia, in trust, &c. The trusts are sufficiently set out in the opinion of Judge *Burks*.

This deed was acknowledged before a commissioner on the next day, and duly recorded on the 4th of April; and Ware, the trustee, was immediately put into possession of the goods.

The creditors of Williams who had brought suits upon their claims, recovered judgments at the April term, 1879, of the court. These judgments appear to have been rendered on the 4th of the month, and were docketed on the 29th. Executions were issued upon them, which went into the hands of the deputy sheriff of the county, when Williams claimed his homestead exemption, and this was set apart to him by regular proceedings. This did not include any part of the goods conveyed by the deed; but was made up of two lots and the buildings thereon, one valued at $1,000 and the other at $150, and of household furniture, the whole valued at $1,368.15. And the judgment creditors having given an indemnifying bond, the officer advertised the goods in the store for sale.

Of the creditors named in the deed only seven accepted it. The others refused to accept it. Levi Stein, one of the creditors who accepted the deed, came on to West Point in June, 1879, and whilst there he, for himself and the others who had accepted, entered into a contract with Mrs. Mary E. Williams, the wife of Richmond H. Williams, by which he sold to her their claims at fifty cents in the dollar, she paying a part in cash and giving her notes on time for the balance, secured by a deed of trust executed by Williams and herself upon two lots, one of them a part of his homestead, and the other held on the property of Mrs. Williams, though the title was in Williams' name, and all her right, &c., to the goods that day purchased, or the proceeds of the sale thereof. The cash payment seems to have been made by money then in the hands of Ware, the trustee, received from his sales of the goods conveyed to him, and the balance by money borrowed by her, or received from Ware, as the proceeds of his sales. And she opened a store in a part of the same building, where she sold goods, keeping such as Ware did not have; and keeping her business separate from him.

In August, 1879, Lord & Robinson, and all the other creditors of Williams except those who had accepted the deed, and those who had recovered judgments against Williams, filed their bill in the circuit court of King William county, in which, after setting out their respective claims against Williams, the deed he had executed, and that the judgments and executions were then in the hands of the deputy sheriff, and he had advertised a sale of the goods, they charge that Ware allowed the funds derived from the sale of the goods to be appropriated by Williams and his wife for the purchase of certain outstanding claims at a discount of fifty cents in the dollar, mentioned and pretended to be secured in the said deed of trust—viz: naming the creditors—taking pretended assignments to the said Mary S. Williams.

They charge that the deed is fraudulent and void on several grounds, which are set out in the opinion of Judge *Burks.*

They charge that Williams has valuable real estate, as well as personal property, which they estimate at $2,500, and that whilst Ware is nominally in possession of the goods, and nominally conducts the business, yet in fact Williams conducts said business; that Mrs. Williams was conducting the mercantile business in the same store-room in which Ware pretends to conduct the business authorized by the deed, the said Ware at the same time acting as her clerk.

And making R. H. Williams, his wife Mary S. Williams, Ware, the trustee, the deputy sheriff and the sheriff, and the creditors who had recovered judgments, and those who had accepted the deed, parties defendants, they pray for an injunction to restrain Ware, the trustee, Williams and his wife from exercising any control over, or from selling or otherwise disposing of said stock of goods, and said Ware from using or otherwise disposing of any money in his hands or under his control derived from the sale of any of said goods, unless they shall give bond conditioned to abide by any order of the court that may be made against them in this suit, and to enjoin the deputy sheriff and the said execution creditors from proceeding to sell said goods; that the court will direct the sheriff or appoint a receiver for the purpose, to take possession of the goods and sell the same; that Ware be required to settle an account of his transactions under the deed, and to pay over the balance that appears to be in his hands, or for which he has made himself liable; that the said deed of trust may be declared void; and that the moneys due from Ware and the proceeds of the sale of the goods may be applied, first to the payment of the execution creditors, and then to the debts of the plaintiffs *pro rata*, &c.

An injunction was granted in the terms of the prayer of the bill, and it was ordered that if Williams, or some one for him, did not execute the bond within five days after a service of a copy of this order, John W. Taylor, sheriff of the county, should take possession of the goods, and after advertising, &c., sell the same on a credit of ninety days on all sums over ten dollars, taking bond, &c.

Williams, his wife Mary S. Williams, and Ware, the trustee, each answered the bill separately. Williams denies that there was any fraud in the deed, or that he had any control or management of the goods after the execution of the deed; and he says that when he executed the deed he had no idea or expectation that Mrs. Williams would or could purchase any of the claims of the creditors who might accept its terms.

Mrs. Williams avers that she was not a party to or in anywise connected with the execution of the deed of trust; she presumes it was executed with a *bona fide* intention to protect the interest of Richmond H. Williams' creditors. She denies all fraud, or that the assignment of the claims she purchased were pretended assignments. On the contrary, she affirms that her purchase of these claims and the assignment to her was a regular business transaction, and was one that was open to every citizen of the Commonwealth, and she purchased without any notice of any difficulty about their title under the said trust deed. That Stein offered the claims for sale to others at the price of fifty cents in the dollar, and he proposed to her to let her take them on such liberal terms as she thought she could meet; and she bought them in her own name, and for her own benefit, and with her own money. She insists she had a perfect right under the laws of the land to engage in mercantile pursuits in her own name. That she borrowed some money from her friends and purchased a small stock of groceries, &c., and put them in one part of the store-

house, separate and apart from the stock under the control of the trustee.    This business was kept separate and apart from that conducted by Mr. Ware, and in no wise interferred with him, but was of advantage to him in conducting his business as trustee.

Ware, in his answer, says he took possession of the goods and proceeded to dispose of them under the provisions of the deed, until he was stopped by the sheriff.    He denies all fraud either in the making or executing the deed, so far as he was concerned.    He avers that he has not allowed either Williams or his wife to use or appropriate the funds derived from the sale of the goods.    He says that in strict fulfillment of the requirements of the deed, he, by the consent of the creditors through Levi Stein, their representative, who had accepted the provisions of the deed, and were therefore entitled to participate in the distribution, under the first quarterly settlement of the funds arising from the sales of the said goods, paid over to Mrs. Mary S. Williams, the assignee of said creditors, the sum to which they would collectively have been at that time entitled. He says it is true that Mrs. Williams did use a portion of the large storehouse for conducting her business, but her business was entirely separate from that conducted by him; that she kept no line of goods kept by him, and her business, so far from injuring his, was advantageous to it, inasmuch that she kept just such things as he did not have, and thus attracted customers to the store who did not come there before she commenced; that he was not her agent to sell the goods, and only rendered her occasional assistance without compensation.

The cause came on to be heard on the 8th of December, 1879, upon the motion of the defendants to dissolve the injunction, the bill, answers, &c., when the court, being of opinion that the defendant Mary S. Williams had not shown herself entitled, as a sole trader, to maintain her

claims to the benefit enuring under the trust by virtue of the purchase by her of the claims of the creditors accepting said deed, as alleged in her answer, but that the same enures to the benefit of her husband, R. H. Williams, and his creditors, overruled the motion of the defendant A. G. Ware, trustee, to dissolve the injunction awarded the plaintiff in this cause, and directed a commissioner to take an account—1st. Of the debts due the plaintiffs and their priorities. 2d. An account of the debts of the defendants holding executions against R. H. Williams. 3d. An account of A. G. Ware, trustee under the deed of trust. 4th. An account of John W. Taylor, receiver of the court in the cause.

On the 8th of March, 1880, the commissioner returned his report. He reported the debts due the plaintiffs making ing in the aggregate $2,596.56. The debts due the execution creditors $733.54. The net amount in the hands of the receiver, John W. Taylor, $975.19. And by his statement E he reported Ware indebted to the trust fund $737.66. But this was done by disallowing credit for the amount he had paid Mrs. Williams. Allowing credit for these payments he was a creditor of the fund for $82.84.

The cause came on again to be heard on the 6th of April, 1880, when the court confirmed the report, and adopted the statement E of the report as showing the balance due from A. G. Ware, trustee, and made a decree that Ware should pay into the Richmond Banking and Insurance Company, to the credit of this cause, the sum of $737.66, and that Taylor should pay out and distribute the sum of $975.15, as far as the same was necessary, to the said creditors holding liens by executions; and that Williams should pay to Lord & Robinson, &c., &c., stating the sums reported due to each of said plaintiffs. And thereupon Williams, Mrs. Williams and Ware applied to a judge of this court for an appeal and *supersedeas;* which was awarded.

*J. N. Stubbs* and *J. A. Jones*, for the appellants.

*R. H. Patton*, for the appellees.

BURKS, J., delivered the opinion of the court.

This case involves, to some extent, the construction of the statute, approved April 4, 1877, entitled "An act securing to married women, on conditions, all property acquired by them before or after marriage" (Acts 1876–77, ch. 329, pp. 333, 334).

The act makes radical changes in the legal capacity and property-rights of married women in this State, and as it has been in operation for a few years only, and many important and probably perplexing questions are likely to arise under its provisions, we deem it judicious, on the present occasion, not to extend our construction beyond the precise requirements of the case as presented.

The first section provides "that the real and personal property of any female who may hereafter marry, and which she shall own at the time of her marriage, and the rents, issues, and profits thereof, and any property, reâl or personal, acquired by a married woman, as a separate and sole trader, shall not be subject to the disposal of her husband, nor be liable for his debts, and shall be and continue her separate and sole property." The case in judgment does not require a consideration of the residue of the section, and therefore it will not be noticed.

From the opinion (made a part of the record) of the learned judge who decided the case in the court below, and from the recitals in the first of the two decrees appealed from, it appears that the claims of Mrs. Williams (appellant here) was rejected, not because of the alleged invalidity of the deed of trust by which the debts assigned to her were secured (for the validity of that deed assailed in the bill

as fraudulent, was not passed upon), but on the ground that she had not shown herself entitled, *as a sole trader*, to maintain her claim to the benefit enuring under the deed of trust by virtue of the purchase by her of the claims of the creditors accepting the said deed of trust.

In other words, the learned judge seems to have supposed that if the title of Mrs. Williams could not be maintained as that of "a sole trader," against the complainants, it could not be maintained at all. In this view he was clearly mistaken. The second section of the act (which he seems to have entirely overlooked or misunderstood) declares in express terms that "*all* real and personal *estate* hereafter acquired by any *married woman*, whether by gift, grant, *purchase*, inheritance, devise or bequest, shall be and continue her sole and separate estate, subject to the provisions and limitations of the preceding sections, although the marriage may have been solemnized previous to the passage of this act."

The first section secures a separate estate to the woman in the property *owned by her at the time of her marriage*, and the rents, issues and profits thereof, and *also* in the property acquired by her *during marriage as a separate and sole trader*, while the second section secures to her such separate estate in *all* property acquired by her *after and during marriage* in either of the modes designated in that section.

"Estate" and "purchase" are among the most comprehensive words in legal terminology. Property in *choses* in action is certainly "personal estate," and the acquisition of such *choses* for a valuable consideration is a "purchase," even in the most restricted legal sense of that term. This interpretation is so obvious and free from difficulty that it needs no support, and admits of no successful contradiction from the adjudications of other States under acts of a similar character, whatever those adjudications may be.

Even though Mrs. Williams may not have been "a sep-

arate and sole trader" within the meaning of the act, as the learned judge seems to have thought (and as to the correctness of this conclusion we need give no opinion), yet, it is clear that her claim to the debts in question and to the security which is an incident, does not rest on a title acquired in that character. She acquired these debts some time before she engaged in the business of a merchant on her own account. The evidence leaves no room for doubt on this point. Her title was that of a purchaser for value, and it is good under the statute against her husband's creditors, if she was a *bona fide* purchaser. And this leads to the consideration of the remaining question, whether the deed of trust which she claims as a security for the debts assigned to her is tainted with fraud, and if so, whether such fraud affects her rights.

The deed conveys the grantor's stock of goods on hand to secure certain creditors named, or such of them as shall within thirty days from the date of the deed file with the trustee a written acceptance of its provisions. The trustee is authorized and directed at once to take charge and control of the goods, and dispose of them to the best advantage by retailing them for cash in the usual course of mercantile trade and business; and "in order the better to dispose of them," he is authorized to add to the stock by purchase for cash, and for that purpose to borrow a sum of money not exceeding three hundred dollars, to be paid out of the proceeds of sale. He is required to keep accurate accounts, and at the end of every three months render to each creditor an accurate statement of his transactions and append to such statement an account showing the amount of money in his hands and the share to which each creditor is entitled, which he is required to pay over within fifteen days; and at the end of twelve months from the date of the deed he is to sell the remnant of the stock by auction for cash, and after winding up the business to have an account of

his transactions settled by one of the commissioners of the county court of King William county (where the deed was recorded), and a copy of the settlement filed in the clerk's office of said court "for the inspection of all the parties in interest."

According to numerous decisions of this court, there is nothing on the face of this deed that warrants the inference of fraud. There is no doubt that the provisions of a mortgage or deed of trust may be of such a character as of themselves to furnish conclusive evidence of fraudulent intent; but the presumption of law is in favor of honesty, and "the court cannot presume fraud unless the terms of the instrument preclude any other inference." *Dance and others* v. *Seamon and others,* 11 Gratt. 778 ; *Brockenbrough's Ex'or and others* v. *Brockenbrough's Adm'r and others,* 31 Gratt. 580, 591.

The following circumstances are relied on by the appellees as badges of fraud apparent from the deed:

1. That the grantor does not convey all his property. This circumstance surely is not indicative of fraud ; for what is not conveyed by the deed, so far as it is liable for debt, may be subjected at once by suit of any creditor to his claim. He is not in the least hindered or delayed. Looking to the evidence, it appears that the grantor conveyed all the property he owned except such as he had the right to claim and hold as exempt from debt. A conveyance of the whole, reserving exemption rights, would have been no evidence of frand—*Brockenbrough's Ex'or and others* v. *Brockenbrough's Adm'r and others, supra,*—and it cannot be unlawful to withhold what the creditor has no right to subject.

It is to be observed that this is not a case in which a release is required from the creditor, and a failure of the debtor to convey *all* his property would vitiate the deed. No release is required by the deed under consideration. *Skipwith's Ex'or* v. *Cunningham, &c.,* 8 Leigh, 271 ; *Kevan and*

*others* v. *Branch,* 1 Gratt. 274 ; *Gordon and others* v. *Cannon and others,* 18 Gratt. 387.

2 and 3. That there is no schedule of the debts secured nor inventory of property conveyed. That such schedule and inventory are not essential has been often decided by this court. See *Gordon and others* v. *Cannon and others, supra,* and cases there cited. The property conveyed and its location are sufficiently described as " all the stock of goods now in the storehouse now occupied by said Williams (the grantor) in conducting the mercantile business, in the town of West Point, Virginia."

4. That the time limited in which the creditors are to accept the provisions of the deed is too short.

The creditors all resided at the same place (Baltimore), could easily be communicated with, and indeed were speedily and within the prescribed time informed of the deed and its provisions. Thirty days were not regarded as too short a period allowed for acceptance by creditors, even where the deed required a release. *Phippen* v. *Durham,* 8 Gratt. 457.

5. That the deed allows the trustee to continue the business.

This, as the deed declares, was to enable the trustee the better to dispose of the goods conveyed. He was empowered to add to the stock to a very limited extent, manifestly with the view of enabling him to make sale of the goods on hand to a greater advantage—to make the trust fund more valuable, and to wind up the business, which was required to be done within a reasonable time. The objection does not apply with as much force as it did in *Marks* v. *Hill,* 15 Gratt. 400, where it was carefully considered and pronounced untenable.

6. That no inventory of the goods was taken by the trustee.

This circumstance goes to the conduct of the trustee

after the deed was executed, not to the provisions of the deed. In fact, however, an inventory was taken by the trustee as soon as the creditors interested suggested it, which was within a short time after the deed was recorded.

The extrinsic facts and circumstances relied on, in connection with the deed, to establish the alleged fraud, are not, in our opinion, sufficient for that purpose.

1. The insolvency of the grantor and the pendency of suits at the time the deed was executed.

These circumstances are not entitled to much weight in determining the question of fraud. They are not inconsistent with honest intent. Men seldom give mortgages or trust deeds to secure creditors generally, unless they are insolvent or in failing circumstances. It is the common case, and as a debtor has the right to pay one creditor in preference to another, so he may, without the imputation of fraud, secure one creditor to prevent another from getting an advantage. *Skipwith's Ex'or* v. *Cunningham and others, supra; Sipe* v. *Earman,* 26 Gratt. 563.

2. The efforts of the grantor to effect a compromise with his creditors and get a release on payment of thirty-five *per cent.* of his indebtedness, were made after the deed had gone to record, and it was not in the power of the grantor to revoke it. Though the creditors had never seen the deed, they knew all its essential provisions. Hart, the agent, had given them the information. It does not appear that he made any misrepresentation. He told them, if they refused to compromise on the terms proposed, they would not get as much under the deed as he offered. Stein, a creditor, who had seen and inspected the goods, made the same representation, and the sequel showed that they were not far mistaken in the estimate they put upon the goods. We do not discover any indication of a fraudulent purpose in this abortive effort of the grantor to adjust his liabilities with his creditors.

3. The legal right of Mrs. Williams to purchase the secured debts was unquestionable. She did purchase. The evidence is conclusive on that point. She had the right to purchase at any price the creditors were willing to take. They were willing to take fifty cents in the dollar for their claims. They made the offer to sell. She did not seek the purchase. She simply accepted their proposition. She may have made a good bargain. If so, she was entitled to the benefit of it. If she had made a bad one, she would have been bound by it and would have been compelled to bear the loss, if loss ensued. She had the right to buy on credit, as she did, and give her notes for the purchase money. In acquiring the debts she acquired the security which was incident. She did not become entitled to the goods, but she acquired the lien of the trust deed and the right to the proceeds of sale to the extent of her claims. The proceeds to that extent were hers, and if she paid the assignors in whole or in part out of the proceeds, she paid them out of her own means. When she gave a deed of trust on those proceeds to secure payment, she dealt with that which was her own. It is true, her husband uniting in the deed conveyed two lots of land. One of these had been duly set apart as his homestead. It was exempt from his debts, and in conjunction with his wife he could encumber it, we apprehend, to secure his wife's debt. No valid objection could come from the creditors, who had no right to subject it. Lot " No. 528," though the legal title, it seems, was in Williams, his wife claimed as her property. If we could look to the depositions of Williams and his wife, the claim is established. But excluding these, there is evidence tending to show that she was entitled to it. The circumstance that it was not included in the husband's homestead deed tends to show that he did not consider the lot as his own. All the property embraced by the homestead deed was of the value of $1,368 only. He was entitled to

hold as exempt, property of the value of $2,000. The lot in question was assessed at $300, which, added to the $1,368, would have been less than the value of the exemption allowed by law. If this lot had been his own, it is not probable it would have been omitted, under the circumstances, in the exemption deed. Unless he owned this lot, he had no property that was not embraced in the homestead deed and in the trust deed conveying the goods for the benefit of his creditors.

At all events, there is nothing in this whole transaction that tends to impute fraud to the trustee or to the creditors who accepted the provisions of the deed, unless the deed is fraudulent on its face, and we think it is not. These creditors, therefore, acquired a good title to the security of the deed of trust by accepting its provisions. They stood in the attitude of *bona fide* purchasers (*Wickham and Gorham* v. *Lewis Martin & Co.*, 13 Grat. 427, 437; *Evans, Trustee,* v. *Greenhow and others,* 15 Gratt. 153, 157; *Exchange Bank* v. *Knox,* 19 Gratt. 739; *Shurtz and others* v. *Johnson and others,* 28 Gratt. 657, 667), and Mrs. Williams in purchasing from them acquired their title, although she may have had notice at the time of her purchase of the equity of the complaining creditors, if equity they had, as against her husband; though there is nothing to show any such notice. It is well settled, that a purchaser *with notice* from a purchaser *without notice* is protected in his title; and the reason is, that if it were otherwise an innocent purchaser might be deprived of the benefit of selling his estate. "It is certainly the rule of this court," says Lord Hardwicke, "that a man who is a purchaser with notice himself from a purchaser who bought without notice, may shelter himself under the first purchaser, or otherwise it would very much clog the sale of estates." *Lowther* v. *Carlton,* 2 Atk. R. 242. See also cases cited 2 Rob. Prac. (Old Ed.), 29; 2 Lead. Cas. Eq., Part 1, (4th Amer. Ed.), 40, 119, 225.

Moreover, the sale to Mrs. Williams has not injured the

creditors now complaining; for the secured creditors, if they had not assigned their claims, would have been entitled to have the full amount paid to them out of the trust property, if sufficient for that purpose; and Mrs. Williams gets nothing more.

Besides, if for any cause the security given to the creditors by Mrs. Williams was defective or invalid, a question might arise between those creditors and Mrs. Williams as to the sale made to her; but that circumstance would not affect the title of the creditors under the trust deed conveying the goods, nor give the complaining creditors any better right. But no such question has arisen in this case. The secured creditors make no complaint, and no one is complaining of them. They are not even parties to the cause. If they had made a gift of their claims to Mrs. Williams, her title would have been good. They chose to sell to her, at a price fixed by themselves. If she makes anything by the bargain, she is legally entitled to it.

Upon the whole case, we are of opinion that the decrees of the circuit court are erroneous and must be reversed. The cause will be remanded with directions to order such accounts as may be necessary, to apply the proceeds of the sale of the goods to the satisfaction of the claims held by Mrs. Williams, and, if anything remains, to distribute it among the other creditors, according to their respective rights.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the appellant Mary S. Williams is a *bona fide* purchaser for value, of the claims of Stein & Co. and the other creditors of the appellant R. H. Williams,

who accepted the provisions of the deed of trust, bearing date March 25, 1879, in the bill and proceedings mentioned, and the said claims are her sole and separate property; that the said deed is a valid security for said claims, and the said Mary S. Williams is entitled to the benefit of said security; and the payments made to and for her on account of said claims by the appellant A. G. Ware, out of the goods conveyed by said deed and out of the proceeds of sales of said goods, were valid payments, and the said circuit court should have allowed the said Ware credit as trustee for said payments, and ordered the proceeds of the sales of said goods, which are under its control, or so much of said proceeds as shall be required for the purpose, to be paid over to the said Mary S. Williams towards the satisfaction of the balance on her claims aforesaid, after the said claims have been credited with the payments made by said trustee; and the residue, if any, of said proceeds, after the claims of the said Mary S. Williams shall have been satisfied, to be applied to the claims of the other creditors of the said R. H. Williams, according to their respective rights.

The court is further of opinion that the said decrees are in conflict with the views hereinbefore expressed and are erroneous; therefore, it is decreed and ordered that the said decrees be severally reversed and annulled, and that the appellees (except F. Meredith, deputy for John W. Taylor, sheriff of King William county), pay to the appellants their costs by them expended in the prosecution of the appeal aforesaid here; and this cause is remanded to the said circuit court for further preceedings to be had therein, in order to final decree, in conformity with the opinion and principles hereinbefore expressed and decided; which is ordered to be certified to the said circuit court of King William county.

DECREE REVERSED.