## Wytheville.

TRUSTEES OF AMERICAN BANK OF ORANGE v. McComb.

June 14, 1906.

1. NEGOTIABLE INSTRUMENTS—*Holder in Due Course—Trustee in Deed to Secure Creditors.*—In this State a pre-existing debt is of itself a valuable consideration for a deed of trust made to secure its payment, and if such deed transfers unmatured negotiable notes to secure creditors of the grantor, the trustee is a holder in due course within the terms of section 52 of the Negotiable Instruments Act (Code 1904, sec. 2841a, ch. 52) if within the other terms of that section.

2. STATUTES—*Construction—Excepting One Class.*—If a statute expressly excepts one class, which would otherwise be within its terms, the exception negatives the idea that any other class is to be excepted.

3. STATUTES—*Construction.*—Where a statute is intended to embody in a code a particular branch of the law, and has specifically dealt with any point, the law on that point should be ascertained by interpreting the language used, and when such language is clear it must control, whatever may have been the prior statutes and decisions on the subject.

4. NEGOTIABLE INSTRUMENTS—*Alterations—"Complete and Regular"—Case at Bar.*—The addition of the words "payable with interest" to a negotiable note, in the same handwriting as the body of the note, written on a blank space after the words "value received," at the most appropriate place on the note on which it could be written without interlining them (in the absence of anything on the face of the note to show that it had been altered or to awaken suspicion) does not render the note incomplete or irregular on its face within the meaning of the Negotiable Instruments Act.

Error to a judgment of the Circuit Court of Orange county, in an action of debt. Judgment for the defendant. Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*Duke & Duke* and *Morton & Schackleford,* for the plaintiffs in error.

*Grimsley & Miller* and *Hay & Browning,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The principal question involved in this case is whether or not the plaintiffs in error, who were the plaintiffs in the court below, are holders in due course of the negotiable note sued on, of which the following is a copy:

"123.50 Int.
"$4,020.

"Orange, Va., Feb'y 29, 1904.

"Six months after date I promise to pay to the order of myself four thousand and twenty dollars. Negotiable and payable at the American Bank of Orange, Orange, Va.

"Homestead and all other exemptions waived by the maker and each endorser.

"Value received.    Payable with interest.

"LELIA MOORE McCOMB."

The note was endorsed in blank by the maker to the American Bank of Orange. That bank, which was in a failing condition, on the 12th day of March, 1904, executed a deed of trust, by which it conveyed, assigned and transferred all of its property of every kind, including the note sued on, to the plaintiffs, for the purpose of securing all the creditors of the bank. The defense relied on was that since the execution of the

note it was, without the knowledge or consent of the defendant, the maker, materially altered by the insertion of the words "payable with interest."

The plaintiffs' replication in effect confessed that the note had been altered, as averred in the defendant's plea, but denied that they had any knowledge of it at the time they became holders of the note, and averred that they were purchasers for value and without notice of the alteration, and are holders thereof in due course.

The plaintiffs introduced in evidence the note and the deed of trust. To that evidence the defendant demurred, which demurrer was sustained by the court, and judgment rendered in favor of the defendant. To that judgment this writ of error was awarded.

By section 124 of an act known as the "Negotiable Instruments Law," approved March 3, 1898 (Acts 1897-'98, pp. 896, 910), which act is found in Va. Code, 1904, as section 2841a, it is provided that where an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor.

The contention of the defendant is that such trustees are not holders in due course under the law merchant, because they did not acquire the paper by endorsement and delivery, as is usual and customary in business circles, and that the "Negotiable Instruments Law" has not changed the rule of the law merchant.

A deed of trust is the most usual method of securing creditors in this State—or at least a very usual method of doing so—and it is not at all clear that, under the principles established by our decisions, such a trustee ought not to be held to be a holder in due course. It is settled law in this State that a pre--

existing debt is of itself a valuable consideration for a deed of trust executed for its security, and that such deed, if it be duly recorded, and was not executed with a fraudulent intent known to the trustees or the beneficiaries, will be valid against all prior secret liens and equities. See *Wickham* v. *Lewis Morton & Co.,* 13 Gratt. 427, 436-7; *Davis* v. *Miller,* 14 Gratt. 1, 14-17; *Evans* v. *Greenhow,* 15 Gratt. 153, 156-7; *Shurtz* v. *Johnson,* 28 Gratt. 657, 667; *Cammack* v. *Soran,* 30 Gratt. 292, 294, 297; *Williams* v. *Lord, &c.,* 75 Va. 390, 404; *Chapman* v. *Chapman,* 91 Va. 397, 400, 21 S. E. 813, 50 Am. St. Rep. 846.

All the authorities cited by the defendant to sustain her contention that such a trustee is not a holder in due course are based upon the case of *Roberts* v. *Hall,* 37 Conn. 205, 9 Am. Rep. 308. The opinion of the court in that case shows that such deeds of trust do not occupy the same high position in that jurisdiction as they do in this State as a method of securing creditors; and the reasoning of the court, by which it reached its conclusion, is not at all satisfactory or convincing in the light of our own decisions above cited.

But whether such a trustee was a holder in due course prior to the enactment of the "Negotiable Instruments Law," there can be, it seems to us, no room for doubt since it went into effect.

The object of that act, as stated in its title, was "to revise, arrange and consolidate into one act the laws relating to negotiable instruments (being an act to establish a law uniform with the laws of other states on the subject)." The history of that legislation, as well as the act itself, shows that it was the intention of the Legislature to embody in one act, not merely the statute law of the State with reference to negotiable instruments, but also the rules of the law merchant—to codify generally the law on the subject. All acts and parts of acts in con-

flict with it are to that extent expressly repealed by subsection 197, and the rules of the law merchant impliedly repealed, except in such cases as are not provided for by the act. Subsection 196.

Subsection 52 declares what constitutes a holder in due course. It defines such a holder to be one who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice, that it had been previously dishonored, if such was the fact; (3) that he took it for value and without notice; and (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Every holder of a negotiable instrument under the conditions named is a holder in due course, unless excluded by some other provision of the act.

Subsection 53 expressly provides that the holder of an instrument payable on demand, negotiated an unreasonable length of time after its issue, shall not be regarded as a holder in due course, and who, but for this express provision excluding him, would have been a holder in due course, under subsection 52.

When the act defines generally who shall be holders in due course, and makes an express exception of a certain class, who would otherwise be embraced, the exception negatives the idea that any other class was to be excepted, in accordance with the maxim, *"Expressio unius est exclusio alterius."* Black on Interpretation of Laws, sec. 64; Sutherland on Stat. Constr., sec. 325; *Somers' Case,* 97 Va. 759, 761, 33 S. E. 381.

Where a statute is intended to embody in a code a particular branch of the law and has specifically dealt with any point the law on that point should be ascertained by interpreting the language used, instead of doing as before the statute was passed—

roaming over a vast number of authorities in order to discover what the law is by extracting it by a minute, critical examination of prior decisions. Lord Bramwell, in *Bank, &c.,* v. *Vogleano,* L. R. Appeal Cases, 107, 144.

If such a statute is to be treated as the defendant insists should be done, and have read into it the law prior to its enactment, the value of codifying the law on the subject of negotiable instruments will be greatly impaired, if not destroyed, and the very object for which it was enacted will be frustrated.

Where the language of such an act is clear it must control whatever may have been the prior statutes and decisions on the subject. Where there is a substantial doubt as to the meaning of the language used the old law is a valuable source of information. *U. S.* v. *Bowen,* 100 U. S. 508, 25 L. Ed. 631; *Bank* v. *Vogleano, supra.*

The language of subsection 52 is free from doubt. The plaintiff trustees are clearly embraced within its provisions, if they satisfy the four conditions named. The only one of these conditions which it is claimed they do not satisfy is the first, viz: That the note is not complete and regular upon its face.

An examination of the original note, which was produced before this court, shows that it was partly printed and partly written; that the words "payable with interest" are in the same handwriting as are the other written portions of the note, except the maker's name; that they were not interlined, but written on a blank space after the words "value received," at the most appropriate place on the note at which they could be written without interlining them. There was nothing on the face of the note to show that it had been altered, or to awaken suspicion. It must, we think, be regarded as complete and regular on its face. This being so the plaintiffs were holders in due course, and the trial court erred in not so holding.

Whether or not the court erred in permitting the defendant to file her special plea without making affidavit to it, and in requiring the special replication to it to conclude with a verification, instead of to the country, need not be considered, since a decision of these questions could not affect the result, as the conclusion reached by this court upon the merits is as favorable to the plaintiffs as it could have been if the plea had been sworn to and the replication had concluded to the country.

The judgment of the Circuit Court must be reversed, and this court will enter such judgment as the Circuit Court ought to have rendered, for the amount of the note, with interest, from the date of its maturity.

*Reversed.*