BROPHY GROCERY CO., Respondent, *v.* WILSON, Appellant.

(No. 3,139.)

(Submitted May 22, 1912. Decided May 29, 1912.)

[124 Pac. 518.]

*Negotiable Instruments—Holder in Due Course—Part Payment—Evidence of Dishonor.*

Promissory Notes—Negotiable Instruments Act Controlling, When.
1. In so far as the provisions of the Negotiable Instruments Law (Rev. Codes, secs. 5842–6037) are clear and unambiguous, they are controlling in the determination of rights of the parties to negotiable paper.

Same—Holder in Due Course.
2. Where the payee named in a demand note for $500 assigned it to plaintiff about twenty months after its date, with indorsements thereon showing partial payments amounting to $450 of the principal sum due, and where it appeared that plaintiff through one of its employees had notice that there was a dispute between the maker and the payee as to whether any balance remained unpaid, plaintiff *held* not to have been a holder in due course, within the meaning of section 5900, Revised Codes, but to have taken the paper with notice of its dishonor.

Same—Part Payment—Evidence of Dishonor.
3. Part payment of the principal stipulated for in a demand note is evidence of its dishonor.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

Action by the Brophy Grocery Company against G. H. Wilson to enforce payment of a promissory note. Plaintiff had judgment, and from an order denying his motion for a new trial, defendant appeals. Reversed and a new trial ordered.

*Mr. John A. Smith,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Edward F. O'Flynn,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On April 2, 1908, the defendant executed and delivered to Agnes Johnson his promissory note, of which the following is a copy:

"$500.00                              Butte, Mont., April 2d, 1908.

"On demand after date for value received, I promise to pay to the order of Mrs. Agnes Johnson Five Hundred and no/100 Dollars in lawful money of the United States, negotiable and payable at Butte, Montana, with interest before and after maturity at the rate of (12) per cent. per annum from date until paid. The makers and endorsers hereby waive presentment, demand, protest, and notice thereof, and agree to pay reasonable attorney's fees in case of suit on this note.

"(Signed)    G. H. WILSON."

Subsequently payments were made by him for which credits were indorsed as follows: "August 26, 1908, paid on principal $100.00; April 10, 1909, on principal $350.00." On or about September 15, 1909, Mrs. Johnson, being indebted to plaintiff to the amount of $80.55 on account of grocery supplies furnished to her by it, transferred the note to it as security for the sum so due. She indorsed it: "Pay Brophy Company the balance due on this note." This action originated in a justice's court and was brought to recover $108.58, alleged still to be due on the note as principal and interest. The complaint is in the usual form. The answer contains a general denial and an allegation of payment to Mrs. Johnson prior to the date of the transfer. At the trial, after proof that the note had been indorsed to plaintiff by Mrs. Johnson for the purpose stated, counsel for plaintiff introduced it in evidence and rested. Thereupon C. W. Gamer,

bookkeeper and "credit-man" for plaintiff at the time the transfer was made, being called on behalf of defendant, testified: "At the time I received this note from Mrs. Johnson I just took the note, and saw the indorsements on the back, and of course saw that there was fifty dollars due on· it; and I thought if Mr. Wilson paid her any more money he would have a receipt, if the money he paid was not indorsed on the note; there would be some indorsement on the receipt, stating the fact that it was this particular note.  She said at the time that we could collect it better than she could.  I do not know whether or not she said that there might be some trouble about the collection of this.   *   *   * I do not know what she actually said with reference to the note at the time I received it, but I remember there was a question of them having some trouble about the note.  She left me with that impression.  I don't know what she said.  Q.  Do you remember testifying in the justice's court that she said she had some trouble with Wilson and there might be trouble about the collection of this note, and she said she thought you might collect it better than she could?  A.  Yes, she left me with that impression.  Q.  Is it not a fact that you testified that Mrs. Johnson said to you at the time that she had had some trouble about this note with Mr. Wilson, and she thought you could collect it better than she could?  A.  Well, I don't know.  She brought the note down there, and I saw the indorsements on it, and I just took it for fifty dollars' worth of commercial paper, as security for the amount she owed us, and she was leaving that day for Salt Lake and she is down in Salt Lake now; and she didn't have time to collect it herself, or try to collect it, and so she just gave it to us as security for her account.  *  *  *  Yes, she left with me the impression that there was trouble about the balance, and more money than that.  She said their affairs were jumbled up in pretty bad shape.  She told me that." It further appeared that plaintiff's place of business is in Butte; that defendant and Mrs. Johnson had been doing business, the former as a merchant and the latter as a boarding-house keeper, a few blocks distant from plaintiff's place of business, and that Mrs. Johnson had been obtaining supplies from the plaintiff for years.

Evidence was then offered to show that at various times from June 10, 1908, to April 12, 1909, inclusive, payments other than those indorsed on the note had been made to Mrs. Johnson by defendant, aggregating in all $165.00, and that on June 22, 1909, Mrs. Johnson had executed and delivered to the defendant her negotiable promissory note for $50.00, due in ten days. The evidence was excluded. The defendant having rested, the court directed the jury to return a verdict for plaintiff for the full amount demanded. Defendant has appealed from an order denying his motion for a new trial.

The court and counsel for plaintiff proceeded upon the theory that the plaintiff was, as a matter of law, a holder in due course of the note in suit, and hence that evidence of payment by the defendant to Mrs. Johnson, prior to the transfer of which it had no notice by indorsement on the note, was immaterial and incompetent. The contention of counsel for defendant is that, in view of the character of the note and the length of time which had elapsed since its execution, the condition in which it was at the time it came into the hands of plaintiff, and the information communicated to Gamer touching the controversy over the amount, if any, then remaining unpaid, it was a question for the jury whether the plaintiff became a holder of it in due course, and hence that the court should have admitted the offered evidence.

As between the maker and payee, a note payable on demand is due as soon as it is executed. As between the maker and the indorsee, the latter is deemed to be the holder in due course if it has come into his hands for value in the ordinary course of business, within a reasonable time after its date. What is a reasonable time has never been fixed by definite rule, but has been held to be determinable by reference to the circumstances of each case. (*Tomlinson Carriage Co.* v. *Kinsella,* 31 Conn. 268; *Pindar* v. *Barlow,* 31 Vt. 529; *Paine* v. *Central Vt. Ry. Co.,* 14 Fed. 269; *Herrick* v. *Wolverton,* 41 N. Y. 581, 1 Am. Rep. 461; *Merrit* v. *Jackson,* 181 Mass. 69, 62 N. E. 987; Wood's Byles on Bills and Notes, p. 331.) Some of the courts, as an examination of the cases cited will disclose, hold that what is a reasonable time is

a question of law for the court. But it is not necessary to examine the decided cases to ascertain the rules by which the rights of the parties here are to be determined. By the enactment of the Negotiable Instruments Law (Laws 1903, Chap. 121; Rev. Codes, secs. 5842–6037), the legislature intended to cover [1] the whole subject of negotiable instruments and thus to set at rest questions touching the rights of the parties which had theretofore been left to be determined by a critical examination of the prior decisions of the courts. (*American Bank* v. *McComb,* 105 Va. 473, 54 S. E. 14.) In so far as its provisions are clear and unambiguous, they must control.

Considerable space is devoted in the brief of counsel for plaintiff to the question whether the note was negotiated within a reasonable time. So much as has been said on this subject is rather by way of digression. The pertinent inquiry presented upon this record is whether the plaintiff became a holder in due [2] course because the note was indorsed to it within a reasonable time, and whether under the facts admitted and proven it became the indorsee without notice. The provision of the statute pertinent here is the following:

"A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; 3. That he took it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (Rev. Codes, sec. 5900.)

The language of this section is free from ambiguity. Under it the holder is one in due course when it appears that all four conditions named are satisfied. Did the facts in evidence justify the court in holding that the plaintiff took the note before it was due and without notice that it had been previously dishonored? We think not. They made out a clear case of notice of dishonor. Though by express recital upon the face of the instrument the necessity for demand was waived, yet the payments indorsed upon it disclosed that the principal sum named had been nearly

fully paid. This fact, it seems to us, must of itself be deemed sufficient, as a matter of law, to give notice to anyone dealing with it that the payee had already demanded payment, or in any event that the payee and the maker had regarded the obligation due long prior to that time. For part payment of the [3] principal stipulated for in a demand note is evidence of its dishonor. (*McLean* v. *Bryer*, 24 R. I. 599, 54 Atl. 373.) If other facts were needed in order to affect plaintiff with notice, the information conveyed to it, through its agent, that there was a dispute as to whether any balance remained unpaid, was amply sufficient. The defendant was entitled to prove payment to Mrs. Johnson, if he could do so. The case should have been submitted to the jury upon the question of payment only.

The order is reversed, with directions to grant the defendant a new trial.

*Reversed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.