PEARSON, J.
 

 The case is not stated with the order and clearness that is so necessary in all judicial proceedings; but, as we understand it, four points are intended to be presented.
 

 1st. Ned, the slave in controversy, was the child of a woman by the name of “ Rittey.” The plaintiff alleged that Rittey was bequeathed to him by his father’s will, and it was material to prove that Rittey was one of the slaves of the testator. Whereupon, he called “ a witness, who named several slaves as formerly belonging to the testator, when the plaintiff’s counsel remarked to the witness, that for the purpose of refreshing his memory, he would ask him whether or not the testator did not own one ^>y the name of Rittey. His Honor said that was an improper question, and refused to allow it to be put in that form,
 
 *361
 
 but required tbe counsel to confine himself to the question in general terms, what slaves did ■ the testator own ? There the case, so far as this point is concerned, stops; and we are left to infer that the witness, in answer to “ the question in general terms,” went on to name Rittey as one of the slaves, who formerly belonging to the testator. So, the point presented is, that the Court erred in refusing to allow the particular question to be asked. A sufficient reply is, the fact was proven; and, supposing the Judge to have erred in refusing to allow the question to be put in the manner proposed, it can make no kind of difference whether it was proven by way of answer to the particular question, or to the “question in general terms.” But we are not disposed to admit that his Honor did err, even supposing the error to be harmless; for, it was certainly a suggestion and leading question; and although in some cases the presiding Judge, in order to save time, and when he sees no harm will result from it, may, in his discretion, allow a leading question to be put, yet his refusing to allow it is never error.
 

 2nd. The defendant then read in evidence three deeds, duly executed and registered, as follows:
 

 State oe North CAROLINA — New HaNover County :
 

 Know all men by these presents, that we, the undersigned, do hereby agree and firmly bind ourselves to the following articles, to wit, viz: that we, the said John Cruse, and Unity Cruse, and Caleb L. Nicholls, do hereby agree to give unto Mary Jane Lee the following property for her and her heirs, Unity Cruse’s natural life excepting, Orrice, Thomas, Rittey, three negroes, and two cows and calves, which we, the said John Cruse and Unity Cruse, and Caleb L. Nicholls, do defend all other claims made by us hereafter. Whereof, we have set our hands and seals, this 12th day of May, 1819.
 

 JOHN CRUSE, (seal.)
 

 UNITY M CRUSE, (seal.) MARK.
 

 CALEB LOPER NICHOLLS, (seal.)
 

 Witness Daniel MoLammy,
 
 \
 

 A. M. Swann. j
 

 
 *362
 
 “ State oe North Carolina — New Hanover County :
 

 Know all men by these presents, that I Caleb Loper Ni-cholls, of the one part, and Unity Cruse, of the other, do hereby give all my right and title to the said Unity Crnse for all negroes, and other property arising frcm the estate of the late Caleb Nicholls, except the following negroes: Fanny, Cas-well, Fillis, Enoch, and the house and lot in town, on the promise that the said Unity Cruse gives the said Caleb L. Nicholls, on demand, the said four negroes, and the said house and lot in town, which was left her her life time. I do hereby defend all right and title heretofore made by me, provided the above articles are agreed to. In witness whereof, I set my hand and seal, this 12th day of May, 1819.
 

 His'
 

 CALEB X LOPER NICHOLLS, (seal.)
 

 Mark.
 

 Witness, Amos M. Swann,
 
 \
 

 Daniel McLammy.” /
 

 “State oe North Carolina — New Hanover County:
 

 Know all men by these presents, that I, Caleb L Nicholls, of the State and county aforesaid, am held and firmly bound unto John Cruse, and Unity, his wife, in the sum of one thousand dollars, should I, the said Caleb L. Nicholls, refuse to make a firm right to the tract or parcel of land willed to me by my father, Caleb Nicholls, the above to stand in full virtue; otherwise, to be null and void, and of
 
 non-effect.
 

 “May 12th, 1819.
 

 "Given under my hand in presence of us,
 

 CALEB L. JimCHOLLS.
 

 “Daniel McLammy,
 

 “A. M. Swann.”
 

 The plaintiff thereupon contended that the deed executed by Unity Cruse, John Cruse and himself had not the legal effect of passing the title, but was a mere executory agreement; and further, that, as a life estate, was reserved, it was inoperative
 
 *363
 
 pass the remainder. His Honor was of a different opinion; we entirely concur with him.
 

 3rd. The plaintiff then proved that he was a man of “weak mind, illiterate, and had to make his mark; that his mother, Unity Cruse, was a woman of turbulent and .overbearing character, had entire control over him, and could do what she pleased with himand thereupon moved the Court to instruct the jury, that, if they were satisfied that the plaintiff had been ""Induced to execute the deeds by misrepresentation, imposition or undue influence, the deeds were void. The Court refused to •give the instruction, but told the jury that, in order to make a deed void at law, “ there must be evidence that it was obtained by duress, or that there was fraud in the
 
 factum;
 
 that is, that' the party did not, at the time of its execution, intend it to be his deed.” This is clearly settled. Devereux v. Burgwin, 11 Ired. 493. “ Under the plea of
 
 non est factum,
 
 if the execution of the deed is proven, it’ cannot be avoided in a court of law, by proof that it was procured to be executed by means of falsehood and misrepresentation, or other fraud. There must be fraud in the
 
 factum,
 
 as by substituting a paper instead of the one intended to be executed, so as to show that the party did not intend to execute the paper, he was made to sign, seal and deliver as his deed.”
 

 So in Gant v. Hunsucker. “ Upon
 
 non est factum,
 
 the instrument would not be avoided, but be held to be the defendant’s deed, notwithstanding any fraud in the consideration, or false representation of a collateral fact, whereby the defendant was induced to execute the instrument.” Logan v. Simmons, 1 Dev. and Bat. 13; Reed v. Moore, 3 Ired. 310.
 

 4th. The plaintiff further offered to prove, that, at-the time these papers bear date, he was of intemperate habits, and an habitual drunkard; but his Honor refused to allow the testimony, unless the plaintiff could prove that he was drunk at the time he executed the papers. There is certainly no error in this. Devereux v. Burgwin, cited above.
 

 8 Judgment affirmed;