HUGH D. McCORKLE, Respondent, v. GEORGE W. MILLER, Appellant.

64 153
64 184
64 153
153s 623

St. Louis Court of Appeals, December 10, 1895.

1. **Promissory Note Payable in Installments:** NEGOTIABILITY AFTER MATURITY OF SOME INSTALLMENTS. A negotiable promissory note is dishonored, and a purchaser takes it subject to equities, while any installment is past due and unpaid; but the mere circumstance, that the note does not contain an indorsement of the payment of an installment which has matured, does not affect its negotiability.

2. **Res Adjudicata:** PARTIES BOUND. One who participates in a trial, not on his own account but as the attorney of one of the litigants, is not concluded by the result.

*Appeal from the St. Louis City Circuit Court.*—HON.
P. R. FLITCRAFT, Judge.

AFFIRMED.

*James R. Kinealy* for appellant.

(1) Five of the installments of this note appearing
on the face of the note to have been overdue when
plaintiff acquired same, he does not occupy the position
of an innocent purchaser for value before maturity,.
and acquired no more title to the note and mortgage
than his assignor, Chas. S. Miller, had.   2 Parsons on
Notes and Bills, p. 279; 2 Randolph on Commercial
Paper, sec. 1006; 3 Randolph on Commercial Paper,
sec. 1683; *Andrews v. Pond*, 38 U. S. 79; *Chouteau v.
Allen*, 70 Mo. 290.   (2) Respondent is bound by the
result of the replevin· suit under which appellant
regained possession of this note and mortgage.
*State ex rel. v. Barker*, 26 Mo. App. 487; *Pugh v.
Williamson*, 1 Mo. App. 361; *Tarleton v. Johnson*, 25
Ala. 300.

*George W. Taussig* for respondent.

BIGGS, J.—Plaintiff's action is for the conversion
of the following note, to wit:

"ST. LOUIS, Mo., July 22, 1893.

"For value received, we promise to pay to the
Collateral Loan Company, or order, fifty-four dollars,
with interest thereon from date at the rate of 8 per cent.
per annum, payable at the maturity of each of the follow-
ing installments; said principal sum to be paid in install-
ments as follows:   On August 22, 1893, $5.40; on
September 22, 1893, $5.40; on October 22, 1893, $5.40;
on November 22, 1893, $5.40; on December 22, 1893,

$5.40; on January 22, 1894, $5.40; on February 22, 1894, $5.40; on March 22, 1894, $5.40; on April 22, 1894, $5.40; on May 22, 1894, $5.40.

(Signed) "ALBERT LAURENT,
"LIZZIE LAURENT."

.The note contained the following indorsement: "Without recourse, Collateral Loan Company per Robt. W. Staley, Secretary." The plaintiff claimed, and his evidence tended to prove, that he purchased the note from Charles S. Miller on the ninth day of January, 1894, and that he subsequently delivered it to Charles Gitchell to secure him against liability as surety on the bail bond of Miller, who had been arrested on charge of embezzlement, and that subsequently the defendant obtained the possession of the note by legal proceedings against Gitchell and Miller and collected the balance due. The plaintiff also introduced evidence which tended to prove that all of the installments, which fell due prior to his purchase, were paid at the time he bought the note.

The defense was that the note was purchased by the defendant from the Collateral Loan Company, and that it was stolen from him by Charles S. Miller, and that, as it contained no credits, it was apparently dishonored at the time it was purchased by plaintiff, thereby precluding him from becoming a *bona fide* holder without notice; and, further, that the title to the note had been previously litigated in an action between the defendant here and Gitchell and Charles S. Miller, where it was finally determined that the defendant was the true owner, and that the plaintiff appeared to the action, conducted the examination of witnesses and also testified as a witness, by reason of which he became conclusively bound by the result of the suit. The cause was submitted to the court without a jury and a judgment was entered for the

plaintiff for $29.08, the balance due on the note at the date of the purchase by plaintiff. From that judgment the defendant has appealed, and he assigns for error the action of the court in refusing his instructions.

The note contained no credits, and the defendant's evidence tended to prove that he had purchased it from the Collateral Loan Company, and that it had been stolen from his safe by Charles S. Miller. The defendant asked, but the court refused to give, an instruction that, if the installments falling due prior to the time plaintiff purchased the note were unpaid, or if there was no memorandum on the note tending to show that the past due installments had been paid, then the plaintiff acquired no better title than Charles S. Miller had, and if the latter stole the note from the defendant, then the plaintiff could not recover.

The principle is well established, and it is one which the defendant sought to apply by the foregoing instruction, that, where the principal of a note is payable in installments, a failure to pay one of them when due makes the note dishonored paper; that this is so whether the whole debt is thus, by the terms of the instrument, rendered due or not; and that a subsequent transferee who takes the note in that condition therefore takes it subject to all equities. The reason of the rule is that, where one or more of the installments remain due, the presumption arises that there is some valid reason for the failure or refusal to pay, which, if established, would likely go to the defeat of the entire debt, and thus all subsequent purchasers or holders of the discredited paper are put on inquiry. *Vinton v. King*, 4 Allen, 562; *Field v. Tibbets*, 57 Me. 359; Daniel on Negotiable Instruments, sec. 787; Tiedeman on Commercial Paper, sec. 297. The objection to the application of this principle here is that the defendant himself testified, and it stands admitted, that all of the/

installments falling due prior to plaintiff's purchase had in fact been paid at the time he bought.

But another principle is embodied in the instruction which the defendant now invokes; it is that, if a note is apparently dishonored, the person who takes it can not under any circumstances claim to be a *bona fide* holder without notice. 2 Parsons on Bills, p. 279; 2 Randolph on Commercial Paper, sec. 1006; 3 ibid, sec. 1683; *Andrews v. Pond*, 38 U. S. 65; *Fowler v. Brantley*, 39 U. S. 318; *Goodman v. Simonds*, 61 U. S. 343; *Goodman v. Harvey*, 4 Ad. & El. 870.

In *Fowler v. Brantley*, *supra*, the note in controversey was made payable to the cashier of a certain bank, or bearer, and it contained, in one corner, the names of three parties to whose credit the proceeds of the discount were to be placed, and it also contained marks or evidences that it had been presented to the bank for discount, and that discount had been refused. These facts appearing upon the face of the note were sufficient in the estimation of the court to dishonor the paper and put subsequent purchasers on inquiry. In *Goodman v. Harvey*, *supra*, the bill of exchange had been protested for nonacceptance prior to its purchase by the plaintiff. This appeared upon the face of the paper. The case of *Andrews v. Pond*, *supra*, presented a similar state of facts. There the bill of exchange had been protested for nonacceptance, and so showed on its face when negotiated. The court held that there could be no distinction in principle between a bill transferred after its dishonor for nonacceptance and one dishonored for nonpayment.

But can it be said that the note here was *apparently overdue or dishonored* at the time the plaintiff bought it? Such a conclusion would necessarily have to rest on the presumption that, as no credits were indorsed, no installments had been paid. As there is

no law making it the duty of the holder of a note to indorse credits or partial payments thereon when made, we can conceive of no foundation for such a presumption. Concerning such an issue we think there is no presumption either way. The party who asserts nonpayment must prove it, and the fact that the note contains no credits has no tendency to prove it. To illustrate: If suit had been brought by the holder of this note to recover one of the installments, or if by the terms of the note the entire debt, at the option of the holder, became due upon failure to pay any of the installments and suit had been instituted upon such default, would plaintiff make a *prima facie* case by simply reading the note? This would seem to admit of but one answer. The plaintiff would certainly be compelled to introduce some independent evidence tending to prove the default. The fact that he was in possession of the note would create no presumption in his favor, as the maker would have no right to have it surrendered until its final maturity. For these reasons we think that the circuit court was justified in refusing the instruction. What we have said applies as well to the other instructions on this branch of the case.

The instruction in respect of the other defense omitted the material fact, that the plaintiff's connection with the former suit was as the hired attorney of Charles S. Miller. The evidence tended to prove this, and, as the instruction did not contain the qualification, it was properly refused. Aside from the parties to the record and their privies, only those are concluded by the litigation who have actually participated in the trial on their own account, or whose duty it was to protect the parties to the record and who have been notified of the suit. The plaintiff was under no obligation, so far as the evidence shows, to protect Gitchell in the possession of the note. He voluntarily turned it over to him

without indorsement or liability. The only understanding was that the securities placed in Gitchell's hands by Charles S. Miller should be first exhausted in the event the bail bond should be forfeited.

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concur.