## Packard *v.* Woodruff, Appellant.

*Promissory notes—Indorsement—"Without recourse"—Negotiability
—Act of May 16, 1901, P. L. 194.*

1. The words "without recourse" following the name of an indorser on a promissory note do not constitute the indorsement a restrictive indorsement, and do not affect the negotiable quality of the paper; and such words do not put a subsequent innocent purchaser for value upon notice and inquiry.

2. If a person indorses a promissory note before the payeé indorses it, and does so in such a way that the payee may write after his indorsement the words "without recourse," and the note subsequently comes into the hands of an innocent purchaser for value without notice, both indorser and purchaser are innocent parties, but as the indorser made it possible for a wrong to be perpetrated, it is he who should suffer.

*Arbitration—Referee's findings of fact—Review—Appeals—Paper-books—Failure to print evidence.*

3. The appellate court will not review a referee's findings of fact, where the appellant has failed to print in his paper-book the evidence that was submitted to the referee.

Argued March 4, 1914.   Appeal, No. 32, March T., 1914, by defendant, from order of C. P. Lackawanna Co., dismissing exceptions to report of referee in case of Nathan J. Packard and Moses Packard, copartners, trading as Packard & Co., v. C. S. Woodruff.   Before Rice, P. J., Henderson, Orlady, Head, Porter, Kephart and Trexler, JJ.   Affirmed.

Assumpsit by holder against indorser of a promissory note.

The case was referred to W. M. Bunnell, Esq., as referee.
The note in suit was as follows:

"$345.00                           November 2d, 1908.

"Ninety days after date I promise to pay to the order of N. B. Levy & Brother, Three Hundred and Forty-Five Dollars at Union Savings & Trust Co., Pittston, Pa.   Value received.                    A. D. Quick,

   "No. 5815.   Due 2–1–'09.                Pittston, Pa.

"Endorsements as follows:

"N. B. Levy & Bro.

"Without recourse to us.

"C. S. Woodruff.

"N. B. Levy & Bro.

"Without recourse to us.

"Pay any Bank, Banker or Trust Co.

　　　"or Order

"Packard & Company, Bankers,

　　　"New York.

"Endorsements Guaranteed."

The referee found as follows:

That the said note was sold outright before maturity, by N. B. Levy & Brother, for a good and valuable consideration, to Packard & Company.

That the said note when due, to wit, on the first day of February, 1909, was duly presented for payment at the bank upon which it was drawn and payment of the same duly demanded, but payment was refused and thereupon the said note was duly protested by a notary public.

It further appears, from the evidence submitted, that the indorsement of C. S. Woodruff was placed upon the said note after delivery to payee, but prior to the time any other indorsement was placed upon the said note, and it further appears that the plaintiffs had no knowledge whatever of the circumstances under which C. S. Woodruff's name appeared upon that note.

The referee found for the plaintiffs for $454.37.

Exceptions to the report of the referee were dismissed by the court.

*Error assigned* was in dismissing exceptions to report of referee.

*A. A. Vosburg*, for appellant, cited: Eilbert v. Finkbeiner, 68 Pa. 243; Central National Bank v. Drey-

doppel, 134 Pa. 499; Barto v. Schneck, 28 Pa. 447; Shafer v. F. & M. Bank, 59 Pa. 144; Lawrance v. Fussell, 77 Pa. 460; Reamer v. Bell, 79 Pa. 292.

*H. W. Mumford*, for appellees, cited: Epler v. Funk, 8 Pa. 468; Bisbing v. Graham, 14 Pa. 14; Shafer v. Bank, 59 Pa. 144; Thorp v. Mindeman, 123 Wis. 149; Evans v. Freeman, 54 S. E. Repr. 847.

OPINION BY KEPHART, J., April 27, 1914:

Does the use of the words "without recourse to us" by an indorser on a promissory note affect the negotiability of the instrument? Is such an indorsement restrictive or qualified? Are subsequent holders affected with notice or is its use sufficient to put them on inquiry as to any defense between prior indorsers or parties? Does the knowledge of a qualified indorser that a prior indorsement without qualification had been procured through fraud affect the right of his indorsee, who was a holder in due course, to proceed against the indorser without qualification? These are the questions presented by this appeal.

The referee to whom the matters in controversy had been submitted by the court below found as a fact, that the note was sold outright before maturity for a good and valuable consideration to the appellee, who had no knowledge whatever of the circumstances under which the appellant's name appeared on that note. The appellants' second specification of error objects to these findings of fact. Inasmuch as the appellant's paper-book does not contain the evidence that was submitted to the referee we must dismiss this exception and accept the findings of fact of the referee to be correct.

Prior to the act of 1901 it had been held that the use of the words "without recourse" did not affect the negotiable quality of the paper and its use was: (1) to exempt the indorser from liability for payment

of the note in case of its dishonor at maturity; (2) a qualified and not a restrictive indorsement; (3) in the usual course of business; (4) that it did not put the indorser on his guard or lead him to suspect that there was anything wrong in the transaction between prior indorsers or the maker and payee; (5) that the holder in due course could not be affected by fraud between prior indorsers or parties: Epler v. Funk, 8 Pa. 468; McDoal v. Yeomans, 8 Watts, 361; Bisbing v. Graham, 14 Pa. 14; Craft v. Fleming, 46 Pa. 140; Ridgway v. The Farmers' Bank of Bucks County, 12 S. & R. 255.

The appellant's contention that prior to the Negotiable Instrument Act of 1901 an indorsement "without recourse" was a restrictive indorsement cannot be sustained; nor does the act of 1901 make it a restrictive indorsement. Section 38 of this act provides that a qualified indorsement . . . . may be made by adding to the indorser's signature the words "without recourse," and as to its negotiability the section further provides "that such an indorsement does not impair the negotiable character of the instrument." This language is clear, precise and free from doubt. It wrote into a statute what had been the decisions of the courts on these same questions, first made more than a century ago, and is in harmony with the law as it exists in other states.

Equally unfounded is the contention of the appellant that under the act of 1901 the use of the words "without recourse" affects subsequent holders with notice or puts them on inquiry as to defenses existing between prior parties. The purpose of the Negotiable Instrument Act, as it relates to an indorsement of this character placed upon an instrument, was to make the instrument as freely negotiable as it would have been had the indorsement been placed thereon without qualification. The act endeavors to make this as plain as possible when it used the words as quoted from sec. 38. If, under the statute, the use of these words would have the effect

of clogging the instrument with defenses unknown to subsequent holders in due course, it would seriously impair the negotiability of the paper and nullify the express purpose of the act. There is nothing in the use of these words that would cause a subsequent holder to suspect that there were any defenses existing between prior parties. Section 65 of the act of 1901 writes into the engagement of every qualified indorser certain warranties. These are for the benefit of subsequent holders and do not weaken the negotiability of the instrument. The chief difficulty under which the appellant labors is the fact that he was led by a trick to indorse the paper before the payee indorsed it. If this is a fraud, it was not and is not now a defense to a holder in due course. Article 4 of this act clearly sustains this conclusion and in sec. 57 the indorser's knowledge of the fraud does not prevent the holder in due course from proceeding against the indorser without qualification. If the appellant was innocent of wrongdoing, the holder in due course is likewise innocent; and of the two innocent parties the one who made it possible for the wrong to be perpetrated is the one who should suffer. As was said by Justice SHARSWOOD, in Schafer v. The Farmers' & Mechanics' Bank, 59 Pa. 144, "If the second indorser allowed the paper to pass from his hands in such a condition that these words might be written with the indorsement of the payee above his name, then as to bona fide holders for value without notice, he would certainly be conclusively bound to answer as second indorser." This answers the first, third, fourth, fifth, sixth and seventh assignments of error. They are overruled and the judgment is affirmed at the cost of the appellant.