Plaintiff in this action brought suit against the defendants to recover $414.00 which it alleges was due upon a conditional sales contract, reserving the title to a certain Buick Sedan, and note, originally executed to the J. T. Setzer Motor Company, and by that company transferred to the plaintiff, which claims to be holder in due course.
The defendants set up that the J. T. Setzer Motor Company obtained the contract and note through fraud after they had fully settled for the car and paid all that was due upon the purchase price contract, which they alleged was a totally different contract from that upon which the plaintiff sues. The fraud complained of allegedly consisted of a misrepresentation as to the character of the papers defendants were called upon to sign, the defendants claiming that they were unable to read and that J. T. Setzer, of the Motor Company, represented to them at the time of the procurement of the execution that the document was a receipt for the car.
The plaintiff exhibited the contract and note sued upon and offered evidence tending to show transfer to it, and that nothing had been paid upon it. Plaintiff admitted that there had been a prior contract of conditional sale, retaining title to this particular car, which had been paid. The contract was a title retaining purchase contract upon the same car bought from the Setzer Motor Company for an additional amount.
The defendants' evidence as to the fraud was substantially as follows: Ernest Rinehardt testified that his wife bought an automobile from the Setzer Motor Company some time in March, 1936, and paid for it at $25.00 per month, to Mr. Setzer; that it had been financed by the M. J. Finance Corporation, and that he got behind with his payments and that Mr. Setzer came to him and said Mr. Danner was after him about the payments and for him to go up there and settle it with Mr. Danner.
That he had had some trouble in Lincoln County about some whiskey being slipped in his car and they took his car to Lincolnton; that he had gone to Hickory and told Mr. Danner about it, and Mr. Danner went after the car, making two trips, for which he paid him $17.00. *Page 382 
Being behind with the payments to the M. J. Finance Corporation, in the amount of $30.50, he got Mr. Danner, of the Finance Company, to pay the $30.50. Afterwards he went to the Setzer Motor Company to see about the title, in company with his wife, and talked to Mr. Setzer, told Mr. Setzer he would like to get the title, and that he had paid off that bill of $30.50, and Mr. Setzer said he would get the title in a few days. "Mr. Setzer had a paper, just a naked white piece of paper like that lady has there, and he said: `Rinehardt, you know I got your car from Lincolnton' — he sent for me two or three times to come by there, and at last I went by, and he said: `All right, come in here a little bit' — nobody was in there but me and him and my wife. He said, `You got your car back?' I said, `Yes,' and he said, `Sign this showing you got your car from Lincolnton,' and I said, `What do I have to sign it for, I done had my car two or three weeks,' and I hung around there and hung around there and he kept walking around, and begging me to sign it. He said, `Go ahead and sign it, there ain't nothing to it, if you don't sign it that will look like sticking a man in the back.'" He said if anything were to happen he would have something to show that I got my car. "Nobody read the paper to us at all. I just signed the paper one time. I thought it was what he said, to get the car from Lincolnton, and I said I guess that is what it is for, if anything should happen to show, you know." He testified that he would not have signed the paper had he known that it was a mortgage on his automobile; that he relied upon what Mr. Setzer told him and believed every word of it; that on that day he did not owe Mr. Setzer any note, accounts, or anything except the $30.50, which he paid on the 16th to Mr. Danner of the Finance Company, and that Mr. Danner on that day gave him his old mortgage and everything and told him he was going down there and get out of the crooked mess, and he came back and said Mr. Setzer would not take the $30.50. That on that day Mr. Danner did not tell him that he had another contract on his car, or mortgage, but that on the next day when he came home his wife showed him where "the M. and J. Finance Company were claiming they had another mortgage on the car" after defendant had paid the $30.50; that his wife said "Mr. Setzer is selling your car back to you again."
In rebuttal, J. T. Setzer, for plaintiff, testified substantially: That Ernest Rinehardt and his wife came into his place of business one afternoon and asked about a title to a certain automobile that they had purchased from the J. T. Setzer Motor Company, and which had been financed by the M. J. Finance Company, the plaintiff. They said they were anticipating paying it off and that they wanted the title to that automobile. "I said, `I can't let you have the title, because you owe a balance on that car to me in the form of a title retention note, *Page 383 
and if you want the use of the automobile to continue we will make out another contract to the M. and J. Finance Company, add that in it and the rest of your account and the balance you owe on the other automobile and you can finance it and you can pay it in monthly payments."
"Mr. Keever, Mr. Reece and Ernest Rinehardt and his wife were present and Ernest first objected to it and started out of the door and he said: `Now, Mr. Setzer, how much did you say that would be?' We figured it up and it was 18 monthly payments at $23.00 per month, and he said, `That is all right, we will sign that.' And he said, `Now is that all we owe?' I said, `That is all and when you pay that the automobile will be yours and there will be no more to it,' and he said, `That's exactly what I want, I want it so there won't be anything else owing on the automobile,' and it seemed that he want away all right. He said, `You have been so nice to me to loan me automobile for my wife to go to Lenoir and get me during the time my automobile was out of repair and also when the people in Lincolnton — ,' and thanked me for doing that and seemed to be as well pleased as any customer I ever dealt with and seemed to have had it exactly how he wanted it."
Witness denied that he had ever asked Ernest Rinehardt to sign a blank piece of paper, and declared that he signed no such paper, but that the title retention note was for a balance on the former purchase of an automobile. He stated that he did not know what kind of car it was, as it was sold during his absence and during the other manager's operation. He further testified as to the transfer of the paper to the M. and J. Finance Corporation.
On cross-examination, witness admitted that the first title retention contract sold to the M. J. Finance Corporation had a warranty that there were no other notes or claims on the car except as set forth in the contract, but that they knew about these "side notes."
Carroll Reese testified that he was bookkeeper for the J. T. Setzer Motor Company; that he was present when the defendants signed the contract and note, and that he, as notary public, took their acknowledgment. He testified as to the manner in which the $414.00 was made up; that it consisted of various items upon the books against the defendant Rinehardt.
L. O. Keever also testified that he was present when defendants signed the contract and note and saw them sign; that he had been after Ernest for some time to "finance" the amount due; that on that day Rinehardt said he wanted to get the whole thing cleared up; that it had been the agreement that "when he traded the cars that he was to finance half of it and when he paid that to refinance this side note." He said he saw no blank piece of paper offered to defendants to sign. He further *Page 384 
testified that after the papers were signed Ernest asked if this would pay everything he owed, including service of the car that he used while his own car was in Lincolnton, and Mr. Setzer told him yes, and that he was glad he could fix it that way.
The witness Danner, recalled, said he knew the Setzer Motor Company held the $247.00 retention note before he bought the $414.00 item — he had previously carried the note to Lincolnton to show that the money was due on the car.
The following issue was submitted to the jury: "Were the signatures to said paper writings, plaintiff's Exhibits B, C, D, E, and F, procured by the false and fraudulent representations of J. T. Setzer, as alleged in the answer?" The jury answered the issue "Yes."
(The exhibits represented the contract and note sued upon by the plaintiff.)
Thereupon, judgment for the defendants ensued, including an order that the contract described in the pleadings should be canceled upon the records as void and of no effect. From this, plaintiff appealed.
In this case the plaintiff made numerous objections and exceptions to the admission and exclusion of evidence, which we have carefully examined and are unable to sustain.
The main contentions of the plaintiff relate to the instructions to the jury, the more serious of which contentions, as we gather from the oral argument and the brief, are addressed to the instructions about "fraud in the treaty" and "fraud in the factum," and the bearing of each, if found, upon the rights of parties. There can be no point in numbering these exceptions in this opinion, since they are not set out above in detail. We have given enough of the proceedings in the trial court, we think, to make the application of our remarks reasonably plain.
In the judge's effort to enlighten the jury as to the effect of fraud upon the rights of the parties, it was proper for him to describe the character and effect of such fraud, if any, as might be disclosed by the evidence — whether it tended to show a fraud practiced on the defendants in the terms of the agreement, or whether a fraud in the procurement of its execution, and we regard the instructions as addressed to this difference.
The distinction is still important in considering transactions under the Negotiable Instruments Law.
"Fraud in the treaty" concerns the terms of the instrument itself and not merely the act or fact of its execution and the procurement thereof. *Page 385 
Recovery may be had by an innocent holder of a negotiable instrument without notice, notwithstanding the fraud. Finance Co. v. Mills,195 N.C. 337, 338, 142 S.E. 26; Medlin v. Buford, 115 N.C. 260,20 S.E. 463.
"Fraud in the factum" concerns the making or the execution of the instrument. The following from Furst v. Merritt, 190 N.C. 397, 401,130 S.E. 40, is apposite to the facts of this case: "As a general rule, it may be said that fraud in the factum arises from a want of identity or disparity between the instrument executed and the one intended to be executed, or from circumstances which go to the question as to whether the instrument, in fact, ever had any legal existence, as, for example, where a grantor intends to execute a certain deed, and another is surreptitiously substituted in the place of it (Nicholls v. Holmes, 46 N.C. 360), or where a blind or illiterate person executes a deed when it has been read falsely to him on his request to have it read (2 Blk. Com., 304; Manser's Case, 2 Coke's Rep., 3), or where some trick, artifice or imposition, other than false representation as to the meaning and content of the instrument itself, is practiced on the maker in effecting the execution of the instrument." See list of supporting authorities following this excerpt in the cited case; see, also, Finance Co. v. Mills, supra.
Upon the principle fraus vitiat omnia such a fraud, if found, would make the notes and contracts void in the hands of any holder, since they were void from the beginning, and would make a good defense in the present action.
The evidence, as we analyze it, tended to show "fraud in the factum," rather than "fraud in the treaty," and the court was justified in instructing the jury to give their consideration to the latter.
The court is certainly not required to submit an alternative issue in order to give the jury the opportunity to label the fraud, or choose between the two; and the plaintiff was not harmed by the refusal of the judge to submit the issue of fraud in the treaty, notwithstanding his extensive reference thereto, since if it were found, either way — "yes" or "no" — non constat, that there was not also fraud in thefactum, and nothing further appearing, the rights of the parties would have remained undetermined.
Upon these considerations, we find
No error. *Page 386