BALLIET, Respondent, vs. WOLLERSHEIM, Appellant.

*November 10—December 8, 1942.*

*Helmuth F. Arps* of Chilton, for the appellant.

For the respondent there was a brief by *Sarto Balliet,* attorney, and *A. W. Parnell* and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Mr. Fulton.*

WICKHEM, J. The defenses in this case were, (1) alteration of the instrument; and (2) fraud in its procurement. The second defense was disposed of by the jury's findings adversely to defendant and is not involved upon this appeal.

The facts are as follows: On May 5, 1939, Louis Lohmann owned a half interest in an oil and gas lease of premises in Clay county, Tennessee. He had paid $250 for this half interest. The gas lease was not registered as a security with the department of securities, state of Wisconsin, nor had any application for registration been made therefor. In April, 1939, Lohmann approached Wollersheim and sought to sell him an interest in this gas lease. On May 5, 1939, he again called on Wollersheim and tried to sell him a one-sixth interest in the lease for $1,250. He showed Wollersheim a blueprint and pointed out thereon the location of four wells producing several hundred barrels a day within a distance of three hundred fifty feet to one thousand two hundred fifty feet from the premises covered by the lease. Wollersheim agreed to purchase a one-sixth interest for the sum of $1,250 making a down payment of $200, and executing the note in suit on a printed instalment form of the Appleton State Bank in the sum of $1,050, with interest at the rate of one per cent after maturity. Lohmann took the note to the Appleton State Bank which refused to take it without a substantial indorser. On June 13, 1939, plaintiff indorsed the note, Lohmann agreeing to pay Balliet $25 for such indorsement. The note was accepted for discount by the bank on June 13, 1939. Wollersheim made three payments of $100 each on the note after which he had become convinced that Lohmann had misrepresented the proximity of producing oil wells. Upon his default, Balliet was called upon by the Appleton State Bank on January 27, 1940, to pay the balance of the note. Upon payment he received an indorsement from the bank without recourse.

Appleton, Wis., _May 5_ 19 39

FOR VALUE RECEIVED, I, promise to pay to the order of The Appleton State Bank

at Appleton, Wis. _One thousand eighty_ Dollars ($ _1080 00_ ) in
monthly installments after date according to the annexed schedule, with interest
_____ at the rate of _____ percent per annum until paid. Failure to pay any install-
ment when due matures the whole principal sum.

$1080 00 _per month until paid_

to secure the payment of said sums, I hereby authorize, irrevocably, any attorney
of any court of record to appear for me in such court, at any time after default hereof,
and confess judgment without process in favor of the holder of this note for the whole
amount then unpaid, together with the interest, costs and ten percent attorney's fees and
to waive and consent to immediate execution upon such judgment, hereby ratifying and
confirming all that said attorney may do by virtue hereof.

Protest waived. This instrument may become immediately due and payable at the
option of the holder in case of the death or insolvency of the maker.

$100 00 PER
MONTH

| Date Due | | | Date Paid |
|----------|---|---|-----------|
| Jan 5 | $ | | |
| Feb. 5 | $ | | |
| Mar. 5 | $ | | |
| Apr. 5 | $ | | |
| May 5 | $ | | |
| June 5 | $ | | |
| July 5 | $ | | |
| Aug. 5 | $ | | |
| Sep. 5 | $ | | |
| Oct. 5 | $ | | |
| Nov. 5 | $ | | |
| Dec. 5 | $ | | |

Address _____ 1F902

The alterations by Lohmann after the note was made and before its delivery to the payee are, (1) a different interest rate was inserted; and (2) the words "after maturity" where those words occur on the printed form in connection with the stipulation for interest were stricken out. The effect of this was to change a provision calling for interest only after maturity and at the rate of one per cent to one calling for payment before maturity at the rate of six per cent.

As we view the matter there is a single question involved in this case: Was the note so incomplete and irregular upon its face as to destroy its negotiable character and disqualify the Appleton State Bank from being a holder in due course? It is not questioned that an altered instrument in the hands of a holder in due course may be enforced according to its original tenor. Sec. 117.42, Stats. If the Appleton State Bank is a holder in due course, plaintiff who derives his title through the Appleton State Bank "has all the rights of such former holder in respect of" the maker since it is plain upon the record that plaintiff was not a party to any fraud, duress, or illegality affecting the instrument. Sec. 116.63. Except for his standing as successor in title to a holder in due course Balliet took overdue and dishonored paper and therefore in his own right cannot be a holder in due course since sec. 116.57 specifies as one of the requirements for such a holder that he shall have become the holder of the instrument before it was overdue. Under sec. 117.43 the alterations on this paper were material in character since there was a change of the amount payable as interest. This leaves only the question whether under sec. 116.57 the note in suit is complete and regular on its face.

We are not here concerned with the mere fact that portions of a printed form are stricken out and written changes made. It has been held, either upon proof that this was a common practice or even without such proof, that such alterations do not render the note incomplete or irregular upon its face. In

this connection see *Clapper v. Gamble* (8th Cir.), 28 Fed. (2d) 755; *Saxon v. McGill,* 179 Ark. 415, 16 S. W. (2d) 987; *Trustees of American Bank v. McComb,* 105 Va. 473, 54 S. E. 14.

What the cases really hold is that such changes do not , necessarily carry notice of alteration. Where mere inspection of an instrument shows that it has been altered the transferee is not a holder in due course. *Elias v. Whitney,* 50 Misc. 326, 98 N. Y. Supp. 667. We shall not attempt to reconcile the doctrines of these cases or to deal with the question whether there was notice of alteration here since for another reason we conclude that plaintiff may not recover.

The first irregularity claimed is that as the note is drafted, there is uncertainty as to the amount and due dates of the instalments in which it is stipulated to be paid. The note is payable in monthly instalments after date according to "the annexed schedule," and the annexed schedule which appears on the left-hand side of the note is not filled out so that the instrument does contain blanks as to the amount due on the various dates. It will be noted that the due dates of these instalments are certain. The payments are to be on the fifth of each month following the execution; the only thing left blank being the amount due each month. However, there was written after the promissory clause the words "$100 per month until paid." We cannot believe that the note in this form is either incomplete or irregular. The due dates of the instalments appear on the side. The plain purport of the promise is to pay in monthly instalments of $100 on the dates carried on the margin of the note. The writing "$100 per month until paid" filled the blanks as to amounts following the marginal due dates. The location of this writing creates no ambiguity.

We now come to the only point of difficulty. An examination of the note will disclose that as heretofore stated the printed word "seven" in the stipulation for interest was

stricken without striking the written arabic "1" which immediately followed it. Above the stricken seven is written the arabic numeral "6." This leaves the note with apparently two stipulated percentages of interest, both inserted in writing and not apparently in the same handwriting. This is quite a different situation from mere changes in the printed form of the note. The note on its face appears to carry two rates of interest and, at the very least, this produces an irregularity of form and an uncertainty as to the amount of interest due upon the note. We are unable to attribute the stroke which appears to be the arabic numeral "1" to a slip of the pen or any other intention than that of writing the numeral. As we read the note, it creates the appearance that the parties either originally stipulated for interest at the rate of one per cent per annum and that the note was altered by writing in the arabic figure "6" or that the note was originally to bear interest at the rate of six per cent and that it had been changed to one per cent by somebody who neglected to strike out the arabic figure "6." In any event, it contains irreconcilable provisions as to payment, is uncertain as to amount, and hence is either nonnegotiable or irregular in form, two terms which probably mean the same thing in this situation and certainly have the same effect. See *First National Bank v. Bosler,* 297 Pa. 353, 147 Atl. 74.

We are unable to escape the conclusion that the note is not fair and regular on its face because of the conflicting rates of interest apparently stipulated for, and the resulting uncertainty as to the amount payable upon it. In view of these conclusions, we hold that the Appleton State Bank was not a holder in due course, and that plaintiff as its transferee is subject to the defense of alteration.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.