430 P.2d 392

Alexander McLEAN and William McLean,
Plaintiffs-Appellees,

v.

Carl R. PADDOCK and Essie Paddock, his
wife, Defendants-Third-Party
Plaintiffs-Appellants,

v.

HARPER REALTY COMPANY, Third-Party
Defendant-Appellant.

No. 8032.

Supreme Court of New Mexico.

July 17, 1967.

**235**

Hines & Mistretta, Albuquerque, for appellees.

Harry E. Stowers, Jr., Gerald W. Roth, Jr., Albuquerque, for appellants Paddock.

Richard C. Civerolo, Paul J. Matteucci, Albuquerque, for appellant Harper Realty Co.

## OPINION

NOBLE, Justice.

The circumstances giving rise to this appeal began in 1958 when Carl R. Paddock and Essie Paddock, his wife (hereafter referred to as Paddocks), executed a real estate listing authorizing Harper Realty Company, a real estate broker (hereafter referred to as Harper), to sell their motel. Harper produced a purchaser acceptable to Paddocks, and a binder agreement was executed, reciting a deposit of $1,000 and providing for a further cash down payment of $8,000 on a total price of $249,000. Both the listing and the binder agreement called for the payment to Harper of a 6% commission on the total purchase price. The binder specified that Harper would receive $3,000 in cash and the balance in

monthly payments. Paddocks and the purchaser thereafter executed a real estate contract which, among other things, directed the Albuquerque National Bank, escrow agent, to pay Harper $75 per month from the purchaser's monthly installment payments. Concurrently with the execution of the real estate contract, Paddocks executed a promissory note in the principal amount of $12,388.20, payable to Harper in monthly installments of $75, representing the balance of the commission. The note was unconditional in its terms and contained no reference to the real estate contract, nor did the contract refer to the note. Harper negotiated this promissory note to Alexander and William McLean (hereafter referred to as McLeans) in May, 1959. Payments on the note becoming in default in January, 1960, McLeans elected to declare the whole balance due, as provided in the note, and sued Paddocks, who, in turn, filed a third-party complaint against Harper.

The trial court found that Harper had orally agreed the note would be paid solely from the monthly installments on the purchase price of the motel, and that Paddocks were induced to sign the note by Harper's false representation that a note was required in order to authorize the escrow agent to make these monthly payments to Harper. The court concluded that McLeans were holders in due course, finding they had no knowledge of Harper's misrepresentations. Judgment was, accordingly, entered in favor of McLeans and against Paddocks. Finding that Paddocks had relied to their detriment upon Harper's misrepresentations, they were awarded a judgment against Harper on their third-party action. Paddocks and Harper have appealed.

▪■ ■ We shall first consider the Paddocks' appeal from the McLeans' judgment. Their first contention is that because the McLeans were not licensed real estate brokers, § 67–24–33, N.M.S.A. 1953, prohibited any action to enforce payment of the note given for the real estate commission. This

argument is without merit. The McLeans' action is not one for the collection of a real estate commission or compensation earned as a real estate broker or salesman within the meaning of that statute. An action seeking judgment on a promissory note is a separate cause of action and Star Realty Co. v. Sellers, 73 N.M. 207, 387 P.2d 319, is, accordingly, distinguishable. See, Institute for Essential Housing, Inc. v. Keith, 76 N.M. 492, 416 P.2d 157. Certainly the commercial policies embodied in the law of negotiable instruments compel the conclusion that this forfeiture clause of the Real Estate Brokers' Law has no applicability where, as here, the note has been negotiated to a holder in due course. See Modern Industrial Bank v. Taub, 134 N.J.L. 260, 47 A.2d 348; Real Estate-Land, Title & Trust Co. v. Dildy, 92 S.W.2d 318 (Tex. Civ.App.).

■ The Paddocks challenge the court's determination that the McLeans were holders in due course of a negotiable instrument on several grounds. We note the issues presented by this appeal are governed by the Uniform Negotiable Instruments Law (§§ 50–1–1, et seq., N.M.S.A. 1953, being ch. 83, Laws 1907), since repealed with the enactment of the Uniform Commercial Code (ch. 96, Laws 1961). The note here involved is dated August 9, 1958, and reads:

"For value received, I, we, or either of us promise to pay to Harper Realty, or order, the sum of Twelve Thousand Three Hundred Eighty-eight and 20/100 Dollars, said amount to be paid in equal installments of Seventy-Five and no/100 Dollars, each, payable monthly after date beginning ———— 1, 1958 and on the first day of each month thereafter until the whole amount first herein named and any interest or costs shall have been paid in full. * * *"

Two contentions arise from the failure of the note to specify, in the blank space indicated, the month in which payments were to begin. Pointing to the requirement of section 1, Negotiable Instruments Law, that the instrument "[m]ust be payable on

demand, or at a fixed or determinable future time," the Paddocks argue that this note lacks negotiability. Alternatively, they argue the blank space prevents the McLeans from taking an instrument "[t]hat is complete and regular upon its face" within the language of section 52 of the Negotiable Instruments Law, defining a holder in due course. See the analysis of similar contentions in Note 22 Columbia Law Rev. 159.

■ The Paddocks rely primarily upon Wilkins v. Reliance Equip. Co., 259 Ala. 348, 67 So.2d 16; In re Philpott's Estate, 169 Iowa 555, 151 N.W. 825; United Ry. & Logging Supply Co. v. Siberian Commercial Co., 117 Wash. 347, 201 P. 21, 19 A.L.R. 506; and Remedial Plan, Inc. v. Ott, 199 Ky. 161, 250 S.W. 825, in support of their position. Each of these cases, however, involves a note containing an omission such as "payable four _____ after date," and having no certainty that it will ever become due. Those decisions are distinguishable. The Paddocks note is "payable monthly after date." The note is dated August 9, 1958. If the instrument had stopped at this point, it could not be doubted but that payments would have commenced September 9, 1958. The following language making payments due on the first day of each month does not create a fatal ambiguity under either theory of the Paddocks. Construing the instrument as a whole, it seems clear that the first payment was intended to be September 1, 1958. Cf. Balliet v. Wollersheim, 241 Wis. 536, 6 N.W.2d 824; Puckett v. Big Lake State Bank, 73 S.W.2d 893 (Tex.Civ.App.).

■ Section 52 of the Negotiable Instruments Law defines a holder in due course as one who had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Section 56, in turn, defines notice as "actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith." Paddocks assert that the presence of a number of suspicious circumstances compels the

conclusion that the McLeans took the note in "bad faith." Attention is first called to the fact that none of the payments made prior to the negotiation are reflected on the note. The proof, however, shows that the original note was in the possession of the escrow agent and that these monthly payments were reflected on a duplicate original kept by Harper. In the light of the principle that the question of good faith is one for the trier of the facts, Winter v. Hutchins, 20 Idaho 749, 119 P. 883; Seaside Nat'l Bank v. Allen, 35 Ariz. 302, 277 P. 68, we cannot agree that the trial court erred, as a matter of law, in its conclusion. Cf. Gebby v. Carrillo, 25 N.M. 120, 177 P. 894; First Nat'l Bank v. Stover, 21 N.M. 453, 155 P. 905, L.R.A.1916D, 1280. In so holding, we note there is no requirement of statute or otherwise that proof of the payment of installments when due be shown on the instrument itself. McCorkle v. Miller, 64 Mo.App. 153 (1895).

■ Paddocks also assert that the endorsement "without recourse" was a second suspicious circumstance. The commentator in Annot. 77 A.L.R. 487, concludes that as a general rule such an endorsement does not affect the character of the endorsee as a holder in due course, since such endorsement does not of itself constitute notice of defects in the instrument. See, also, 11 Am.Jur.2d, Bills & Notes, § 406; 1 Joyce, Defenses to Commercial Paper, § 647 (2d Ed. 1924) p. 883; and see Howard v. Biggs, 378 P.2d 306 (Okla.1962). Section 38 of the Negotiable Instruments Law expressly states such an endorsement does not impair the negotiable character of the instrument. See Beutel's Brannan, Negotiable Instruments Law, § 38 at page 626 (7th Ed. 1948). Although the authorities are not uniform as to whether such an endorsement can be regarded as evidence of bad faith, compare Continental Nat'l Bank v. Cole, 51 Idaho 140, 3 P.2d 1103, 77 A.L.R. 484, with Merchants' Nat'l Bank v. Branson, 165 N.C. 344, 81 S.E. 410; and Robertson v. Budzier, 229 Mich. 619, 201 N.W. 949, the use of such an endorsement, we feel, has a le-

gitimate place in commercial instruments. To hold that such an endorsement constitutes some badge of guilty knowledge of fraud would unduly impair the negotiability of commercial paper. See Downs v. Horton, 287 Mo. 414, 230 S.W. 103; Packard v. Woodruff, 57 Pa.Super. 176 (1914).

■ The blank space for the beginning month of the installment payments, asserted as the third suspicious circumstance, has been discussed. We cannot say that any of the circumstances pointed to, alone or collectively, compel a conclusion of bad faith by McLeans or an actual knowledge of an infirmity in the note. Our review of the record discloses that the court's findings have substantial support in the evidence.

■ Paddocks next argue that Harper's fraud in securing the note is a defense even against a holder in due course. In considering this point, a distinction must be drawn between fraud in the execution and fraud in the inducement. Fraud in the execution of the instrument exists where the instrument was signed under a mistaken belief as to its contents, due to fraud. Lovato v. Catron, 20 N.M. 168, 148 P. 490, L.R.A.1915E 451; see, also, Davis v. Magee, 128 N.J.L. 137, 24 A.2d 522. Or, otherwise expressed, where executed in a belief the instrument is something other than it actually is, where there has been a fraudulent substitution of one instrument for another or where the signature is procurred by some similar trick or device. Papke v. G. H. Hammond Co., 192 Ill. 631, 61 N.E. 910; Furst & Thomas v. Merritt, 190 N.C. 397, 130 S.E. 40. Fraud in the inducement, by comparison, exists where the maker understands the identity of the payee, the consideration, the subject-matter and terms of the contract but is induced to execute the instrument by a fraudulent misrepresentation. Lovato v. Catron, supra. Where fraud in the execution is present, no contract ever existed. Where it is in the inducement, the instrument is voidable only and the defense fails to survive a negotiation to a holder in due course. · C.I.T. Corp. v. Panac, 25 Cal.

2d 547, 154 P.2d 710, 160 A.L.R. 1285; 1 Joyce, Defenses to Commercial Paper, § 235 (2d Ed. 1924). This essential distinction was not changed by the enactment of the Uniform Negotiable Instruments Law. C.I.T. Corp v. Panac, supra; M. & J. Finance Corp. v. Rinehardt, 216 N.C. 380, 5 S.E.2d 138; Security Finance Co. v. Floyd, 294 S.W. 1113 (Tex.Civ.App.); 4 Williston on Contracts, § 1159 (Rev.Ed.); 2 Daniel on Negotiable Instruments, § 997 (7th Ed. 1933); cf., Farmers' State Bank v. Clayton Nat'l Bank, 31 N.M. 344, 245 P. 543, 46 A.L.R. 952 (1926). The testimony of the Paddocks indicates, at most, fraud in the inducement. Their contention is, accordingly, without merit.

■ We cannot agree that because Harper acted as a "collector" for a short period of time in receiving and remitting payments to the McLeans, a principal-agent relationship was created so as to impute to the McLeans Harper's knowledge that the note was, in fact, conditioned upon performance of the real estate contract. The trial court found that McLeans had no actual knowledge of such an oral agreement. Even were we to assume a principal-agent relationship existed, it would not follow Harper's knowledge was imputed to the McLeans. The rule respecting such relationship is stated in Restatement of the Law, Agency 2d § 279, as:

"The principal is not affected by the knowledge of an agent as to matters involved in a transaction in which the agent deals with the principal * * * as, or on account of, an adverse party. * * *

"Illustrations:

"1. Having obtained goods from T by fraud, A sells them to his principal, P. P is not bound by A's knowledge. * * *"

This rule has been applied to situations involving knowledge by an agent of equities or infirmities in promissory notes sold by the agent to the principal. See Lawrence v. Tennessee Valley Bank, 224 Ala. 692, 141 So. 664 (1932); Futrall v. McKennon, 187

Ark. 374, 59 S.W.2d 1035. And under this rule the principal has been granted the status of a bona fide purchaser despite the agent's knowledge of wrongdoing. Union Old Lowell Nat'l Bank v. Paine, 318 Mass. 313, 61 N.E.2d 666 (1945); Tallahatchie Home Bank v. Aldridge, 169 Miss. 597, 153 So. 818 (1934). Cf. George H. Sasser & Co. v. Chuck Wagon System, 50 N.M. 136, 172 P.2d 818 (1946). Compare, Munroe v. Harriman, 85 F.2d 493 (2d Cir. 1936).

█ Finally, Paddocks urge this court to look to "substance" rather than "form" and construe the note in conjunction with the real estate contract so as to ascertain the true intent of the parties. It appears to be well settled, however, that general rules of construction respecting contemporaneously executed instruments are inapplicable where the negotiability of an instrument is involved, i.e., where it is in the hands of a holder in due course. 1 Daniel on Negotiable Instruments (7th Ed.) § 171, p. 210; Wilkins v. Reliance Equip. Co., supra; Misso v. Nat'l Bank of Commerce, 231 Miss. 249, 95 So.2d 124; Miller v. Ottaway, 81 Mich. 196, 45 N.W. 665, 8 L.R.A. 428.

Turning now to Harper's appeal, we find three grounds urging reversal. Taking the view we do, it is unnecessary to discuss the first point concerning the applicability of the parol evidence rule to the testimony of the Paddocks.

Harper asserts that the court erred in entering the third-party judgment against him upon a finding that execution of the promissory note was induced by his fraudulent misrepresentation of a material fact. The fraud found by the trial court took the form of a false representation that, notwithstanding the instructions to the escrow agent in the real estate contract, the escrow agent would not make the monthly payments to Harper without a note executed by the Paddocks. The attack on the judgment is twofold: (1) that the evidence of fraud falls short of the quantum required to support proof of fraud; and (2) that fraud, either as actionable fraud or as an affirmative defense, was not pled by Pad-

docks in the third-party complaint, and, accordingly, evidence thereof was inadmissible.

█ Evidence is not substantial in support of a finding of fraud unless it is clear, strong and convincing. First Nat'l Bank v. Lesser, 10 N.M. 700, 65 P. 179; Shaw v. Board of Education, 38 N.M. 298, 31 P.2d 993, 93 A.L.R. 432; Frear v. Roberts, 51 N.M. 137, 179 P.2d 998; Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299. The quantum of evidence required to support a finding of fraud was defined in Lumpkins v. McPhee, supra, as more than that which constitutes substantial evidence to carry the burden of proof where only a preponderance of the evidence is required. This court there said:

"The evidence in support of a finding of fraud is not deemed substantial, *if it is not clear, strong and convincing. * * ** and where it is evenly balanced or *barely* tips the scales in a party's favor, that is *barely* preponderates, *it is not so supported. * * *"

The test laid down in Lumpkins and reaffirmed in Visic v. Paddock, 72 N.M. 207, 382 P.2d 694, is:

"'When all the evidence is in, fraud being the issue, * * * if the greatest effect it has on the mind of the fact finder is to leave it confronted by a question mark on the vital issue, was there fraud?—then there is not that type of evidence which alone is to be deemed substantial and a finding of fraud cannot be supported.

"'On the other hand, if, when the evidence is all in the scales, they tilt instantly to the affirmative of the issue of fraud charged; if, the balancing of the scales proclaims an affirmative in unmistakable tones, leaving in the fact finder's mind an abiding conviction that the charge made is true, then such evidence may with all propriety be called clear, strong and convincing and it is substantial.'"

The evidence pertinent to fraud is the testimony of Mrs. Paddock that because of

the small down payment on a $249,000 purchase price, $9,000, Harper would take $3,-000 on his commission in cash and the balance at $75 out of the installment purchase price payments. She testified that she thought the provision for payment at $75 per month from the purchase · payment would protect them in the event of default in the purchase payments, and that in closing the transaction, Mr. Harper handed them the $12,388.20 note saying he needed the note because the escrow agent couldn't deduct $75 per month from the purchase payments without something to show that he (Harper) was entitled to it. Mr. Paddock's testimony was that when he asked what the note was for, Harper stated he had to have this to give it to the bank so he could get the commission payments from the purchaser and he had to take it to the bank. Harper emphatically denied any understanding or statement that his commission payments would cease if default was made in the purchase contract or that he had told the Paddocks that the escrow agent required a note as a prerequisite to paying him from the purchase payments as instructed by the contract.

Viewing the evidence, including the written instruments, in the light of well-established rules in this jurisdiction, we are unable to say that it meets the test of clear, strong and convincing evidence which instantly tilts the scales to the affirmative on the issue of fraud. There is, accordingly, not present evidence which may be said to be clear and convincing. It fails to substantially support the findings of fraudulent misrepresentation.

In addition, the third-party complaint failed to plead fraud as an affirmative defense as required by Rules 9(b) (§ 21–1–1(9) (b), N.M.S.A.1953). Those matters constituting an avoidance or affirmative defense not pled as required by the rules are not available as a defense. Witt v. Skelly Oil Co., 71 N.M. 411, 379 P.2d 61; Southwest Motel Brokers, Inc. v. Alamo Hotels, Inc., 72 N.M. 227, 382 P.2d 707; L. & B. Equip. Co. v. McDonald, 58 N.M. 709, 275 P.2d 639; Keirsey v. Hirsch, 58 N.M. 18, 265 P.2d 346, 43 A.L.R.2d 929; Edward H. Snow Development Co. v. Oxsheer, 62 N.M. 113, 305 P.2d 727; Chavez v. Kitsch, 70 N.M. 439, 374 P.2d 497; Roybal v. White, 72 N.M. 285, 383 P.2d 250. Rule 9(b) requires the same particularity respecting the assertion of actionable fraud in a complaint as Rule 8(c) respecting pleading affirmatively to a preceding pleading. See Fullerton v. Kaune, 72 N.M. 201, 382 P.2d 529; Paramount Film Distrib. Corp. v. Jaffurs, 11 F.R.D. 437 (W.D. Pa. 1951); Seward v. Hammond, 8 F.R.D. 457 (D.Mass. 1948); Producers Releasing Corp. v. Pathe Industries, Inc., 10 F.R.D. 29 (S.D.N.Y. 1950), reversed on other grounds; C.I.T. Financial Corp. v. Sachs, 10 F.R.D. 397 (S.D. N.Y. 1950); Suckow Borax Mines Consol., Inc. v. Borax Consol. Ltd., 185 F.2d 196 (9th Cir. 1950).

This is not a situation where evidence on the issue was received without objection and the question thus treated as if it had been raised by the pleadings or by trial amendment thereto, as in Posey v. Dove, 57 N.M. 200, 257 P.2d 541; Merrifield v. Buckner, 41 N.M. 442, 70 P.2d 896; Davis v. Savage, 50 N.M. 30, 168 P.2d 851; In re Field's Estate, 40 N.M. 423, 60 P.2d 945, or George v. Jensen, 49 N.M. 410, 165 P.2d 129. The record before us is replete with objections to the admission of any evidence concerning fraud, misrepresentations or any parol variance of the written instruments. No trial amendment was offered either for the purpose of making such evidence and any issue presented thereby admissible or to make the pleadings conform to the proof. Indeed, Paddocks do not assert that a trial amendment was either offered or permitted. The author, 3 Moore's Federal Practice, p. 996, in discussing Rule 15(b), identical with our Rule 15(b) (§ 21–1–1(15) (b), N.M.S.A.1953) permitting trial amendments, said "where evidence has been admitted over objection and the pleadings have not been amended,

no amendment can be implied." See Giles v. Herzstein, 43 N.M. 518, 96 P.2d 289.

We are unable to agree with the argument by Paddocks that the third affirmative defense to the complaint by McLeans alleging that transfer of the note to McLeans "was conceived in fraud" satisfies the requirements of affirmatively pleading fraud. That was pled as an affirmative defense to a different action between different parties. It was, accordingly, error to grant the third-party judgment based upon fraud which was not alleged in the third-party complaint. Other questions are argued but they either are resolved by what we have said, found to be without merit, or unnecessary to determine.

The judgment in favor of McLeans against Paddocks should be affirmed and the third-party judgment in favor of Paddocks and against Harper should be reversed. The cause is, accordingly, remanded with directions to the district court to proceed in a manner not inconsistent with what has been said.

It is so ordered.

CHAVEZ, C. J., and HENSLEY, C. J., Court of Appeals, concur.