**UNITED STATES of America**

v.

**The REAL PROPERTY LOCATED AT 5201 WOODLAKE DRIVE, et al.**

No. 2:93–CV–179.

United States District Court, M.D. North Carolina, Greensboro Division.

July 25, 1995.

As Amended July 27, 1995.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for U.S.

Floyd & Linda Caldwell, pro se.

Richard G. Buckner, Charlotte D. Brown, Sharpe & Buckner, Rockingham, NC, for Jacqueline Raines Dunlap.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before the Court on the United States' Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The United States' Motions pertain to the respective claims filed in this forfeiture proceeding by Floyd and Linda Caldwell and the Estates of Maceo McEachern and Vela McEachern.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts leading up to this forfeiture action are as follows. Joey and Barbara Caldwell owned a business by the name of Gymbags, Inc. ("Gymbags"). Joey and Barbara Caldwell developed and marketed, through Gymbags, a sports drink known as "Pro-formance." Around December, 1990, Joey and Barbara Caldwell decided to sell the trademark, manufacture, market, and distribution rights to "Pro-formance." Their plan was to kill the purchaser of the distribution rights to "Pro-formance" in order to collect the proceeds from life insurance policies issued by Great West Life Assurance Company ("Great West Life") and Sun Life Assurance Company of Canada ("Sun Life").

In furtherance of their conspiracy to murder, on January 21, 1991, Joey and Barbara Caldwell purchased a 12–gauge shotgun in Garden City, Georgia. On February 15, 1991, Joey and Barbara Caldwell sold the rights to "Pro-formance" to Maceo McEachern. As a part of the sales contract, Joey and Barbara Caldwell required that "key man" life insurance policies be issued on Maceo McEachern's life. On or about April 10, 1991, the life insurance policies were issued in an amount totalling $2,000,000.

On April 12, 1991, Joey Caldwell shot and killed Maceo McEachern and Vela McEachern, the mother of Maceo McEachern, at the McEachern's residence located in Hamlet, North Carolina. In or about April or early May, 1991, Joey and Barbara Caldwell filed claims with Great West Life and Sun Life and certified that they were not responsible for the death of Maceo McEachern. As a result of Maceo McEachern's death, Joey and Barbara Caldwell received over $2,000,-000 in insurance proceeds from the named insurance companies.

Subsequently, Barbara Caldwell confessed admitting her involvement in the conspiracy and testified against her husband in his criminal trial. (Transcript of Testimony of Barbara Caldwell, Gov't Ex. B. at 39–81.) Following the trial, Joey Caldwell was convicted of mail fraud, two counts of transporting a firearm in interstate commerce with intent to murder, one count of a money laundering conspiracy, and forty-nine counts of money laundering. Subsequent to the trial, Joey Caldwell committed suicide.

However, Joey Caldwell's Stipulation, which was signed prior to his death, and Barbara Caldwell's testimony verify that the Defendant personal properties were purchased from the life insurance proceeds. (Gov't Ex. B–2 at 38–46; Gov't Ex. C, Stipulation of Joey Caldwell at 38–46.) Furthermore, Joey and Barbara Caldwell improved the Defendant Real Property with more than $150,000 which was also insurance proceeds that were paid as a result of Maceo McEachern's death.

On March 23, 1993, the United States ("government") filed its complaint, with its supporting affidavits, requesting forfeiture of Defendant real and personal property pursuant to 18 U.S.C. § 981. On October 4, 1993, the claimants, Floyd and Linda Caldwell ("the Caldwells"), father and stepmother of Joey Caldwell, filed a claim based on an alleged $75,000 unsecured loan, less amounts repaid, that they had made to Joey Caldwell, Barbara Caldwell, and Gymbags, d/b/a Pro-formance. On February 14, 1994, the Estates of Maceo McEachern and Vela McEachern ("the Estates") filed a claim based upon a theory that the funds used to purchase the Defendant properties were derived from the wrongful deaths of Maceo McEachern and Vela McEachern. On April 8, 1994, Barbara Caldwell filed a consent to forfeiture, whereby she knowingly and voluntarily withdrew and renounced any interest she may have

had in the Defendant properties. On June 17, 1994, the government filed a motion to dismiss, or in the alternative a motion for summary judgment, alleging that neither the Caldwells nor the Estates had any standing to contest the forfeiture.

For the reasons stated below, the Court finds that the Caldwells and the Estates lack standing. Therefore, the government's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will be granted. Since the Motion to Dismiss is dispositive of all the claims filed by the Caldwells and the Estates, the Court will not address the government's Motion for Summary Judgment.

### DISCUSSION

Before the Court begins with its discussion of Article III standing, the Court will first address a preliminary matter which requires discussion, that is, whether the claims of the Caldwells and the Estates should be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Supreme Court has offered guidance for federal courts to follow with respect to granting a motion to dismiss for lack of standing by stating that:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin,* 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (citations omitted). With this legal principle in mind, the Court now addresses the main issue before the Court.

The main issue which bears on the government's Motion to Dismiss is whether the Caldwells and the Estates have sufficient standing within the constitutional dimension of Article III to contest the seizure of Defendant real and personal property. " 'Standing ... is literally a threshold question for entry into a federal court', because of the constitutional limitation of federal court jurisdiction to cases and controversies." *United States v. $321,470.00, United States Currency,* 874 F.2d 298, 302 (5th Cir.1989); *United States v. $38,570 United States Currency,* 950 F.2d 1108, 1111 (5th Cir.1992). For this reason, courts have held that "in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *United States v. $38,000.00 in United States Currency,* 816 F.2d 1538, 1543 (11th Cir.1987); *see United States v. One 18th Century Colombian Monstrance,* 797 F.2d 1370, 1375 (5th Cir.1986), *reh'g denied,* 802 F.2d 837, 838 (5th Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987). "This is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2205; *see $321,470.00, United States Currency,* 874 F.2d at 298. Moreover,

> [a] forfeiture proceeding is not an action against the claimant but rather is an *in rem* action against the seized property brought under the fiction that the property itself is guilty of facilitating the crime. Therefore, although the government bears the initial burden of proving probable cause, it does not bear that burden with respect to a given claimant unless the claimant makes a valid claim that he has a legally cognizable interest in the property that will be injured if the property is forfeited to the government. It is this claim of injury that confers upon the claimant the requisite "case or controversy" standing to contest the forfeiture.

*$38,000.00 in United States Currency,* 816 F.2d at 1543 (citation omitted).

In addition, the Fifth Circuit has pointed out that prior federal court decisions:

indicate that the claimant must come forth with *some* evidence of his ownership in order to establish standing to contest a forfeiture. We agree with the reasoning of these cases, and hold that a bare assertion of ownership of the *res*, without more, is inadequate to prove ownership interest sufficient to establish standing....

Ordinarily, therefore, a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture.... Courts generally look to indicia of dominion and control such as possession, title, and financial stake.

*$38,570 United States Currency,* 950 F.2d at 1112 (5th Cir.1992) (footnote omitted) (citation omitted).

In the instant case, Joey and Barbara Caldwell conspired and executed a scheme to murder Maceo McEachern in order to illegally obtain life insurance proceeds. Barbara Caldwell pled guilty and testified against Joey Caldwell. Subsequent to his trial, Joey Caldwell was convicted on several counts of money laundering under 18 U.S.C. § 1957.[1] Barbara Caldwell's testimony, Joey Caldwell's Stipulation, along with other affidavits, establish that Joey and Barbara Caldwell improved and purchased Defendant real and personal property with the insurance proceeds from Great West Life and Sun Life. (Govt's Ex. B–2; Stipulation of Joey Caldwell, Govt's Ex. C at 38–46; Govt's Ex. A at ¶ 48–50.) All of these purchases and improvements were in violation of 18 U.S.C. § 1957. Therefore, since the Defendant real and personal properties are traceable to the illegally obtained insurance proceeds under 28 U.S.C. § 1957, the Defendant property is forfeitable pursuant to 18 U.S.C. § 981.[2]

With respect to the claims of the Caldwells and the Estates, the issue still remains one of whether the purported claims are sufficient to create a legally cognizable interest in the subject property. If such an interest exists, then standing may be established for either of the parties, otherwise there is no standing in this forfeiture proceeding. With this in mind, the Court will now consider the respective parties' interest separately in order to determine if they have standing.

### 1. The Caldwell's Loan

■ The Caldwells have filed a claim against the Defendant real and personal property asserting that they loaned $75,000, less amounts repaid, to Joey and Barbara Caldwell, and Gymbags, from 1989 until 1993. The Court takes these allegations as true. Nevertheless, although the Caldwells did loan money to Joey and Barbara Caldwell, the Caldwells have failed to provide any documentation that their loan was a secured loan through a deed of trust or in any other manner. Certainly, without a deed of trust, they would have no secured interest in the Defendant real property. Even if they did have a deed of trust, they still would rank behind the mortgage holders of record who had a secured interest in the Defendant property prior to the improvements thereon by Joey and Barbara Caldwell. Furthermore, they have not provided any evidence of a secured interest against any of the Defendant personal property. At most, what the Caldwells have provided is evidence of checks written to them by Joey and Barbara Caldwell without any reference to the Defendant real or personal property. The Caldwells assert that these checks represent repayment checks for the $75,000 loan. Even

1. (a) Whoever, in any circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

....

(d) The circumstances referred to in subsection (a) are—

(1) that the offense under this section takes place in the United States or in the special mari-

time and territorial jurisdiction of the United States....

18 U.S.C. § 1957.

2. Section 981(a)(1)(A) states in pertinent part that:

(a)(1) Except as provided in paragraph (2), the following property is subject to forfeiture to the United States:

(A) Any property, real or personal, involved in a transaction or attempted transaction in violation ... of section 1956 or 1957 of this title, or any property traceable to such property.

if this fact is true, these checks are not relevant with respect to whether the Caldwells have a legally protected interest in the Defendant real and personal property.

At the very least, an ownership interest in real property legal or equitable has to be evidenced by a legal document indicating a secured position. "Ordinarily, a creditor secured by a mortgage or deed of trust on real property may recover the full amount of the debt." *Blanton v. Sisk,* 70 N.C.App. 70, 318 S.E.2d 560, 562 (1984). This is the present case here. The Caldwells, as creditors, could have secured their loan through a deed of trust in order to ensure their recovery of the full amount of the debt. However, as mentioned previously, the Caldwells have failed to come forward with any evidence that their loan was protected by any legal encumbrance on the Defendant real property. The Caldwells have also failed to provide any documentation of any ownership right or lien with regard to the Defendant personal property. Therefore, at best, the Caldwells are unsecured creditors who will have to pursue other legal remedies for return of their $75,000 loan. In other words, they would have no greater claim than the next unsecured creditor with a claim against Joey and Barbara Caldwell from whom the title, although void *ab initio* (as will be discussed hereinafter), originated.[3]

And lastly, since the Caldwells made their loan to Joey and Barbara Caldwell, and Gymbags, and not for the purpose of improving or acquiring Defendant real and personal property, the Caldwells have no financial stake in the Defendant real and personal property. Admittedly, the situation could very well be different if Gymbags was being subjected to forfeiture but that is not the present case here.

Having reviewed all of the foregoing evidence, the Court finds that the Caldwells have not satisfied the "case or controversy" prong of Article III. The Caldwells have clearly failed to establish a protectable interest as to the Defendant real and personal property. As the Fifth Circuit has succinctly

pointed out in *One 18th Century Colombian Monstrance,* 802 F.2d at 838, there is "no case or controversy, in the constitutional sense, absent a dispute between parties who have a real interest in its resolution." No such dispute or real interest exists for the Caldwells. Therefore, based upon the facts presented, there is no reason to stay the forfeiture proceeding because of an unsupported claim or interest being asserted by the Caldwells against the Defendant real and personal property.

Since the Court finds that the Caldwells have failed to meet the threshold requirement of standing, the Court finds that the Caldwells have failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Therefore, the government's Motion to Dismiss will be granted on Floyd and Linda Caldwell's claim on the Defendant real and personal property.

**2. The Estates of Maceo McEachern and Vela McEachern**

■ Even though the Estates raise the issue of a constructive trust, the jurisdictional question is still whether they have standing to prohibit this forfeiture action. The Estates argue that a constructive trust should be imposed on the Defendant property because Joey and Barbara Caldwell murdered Maceo McEachern in order to obtain the insurance proceeds.

■ "A constructive trust is merely a procedural device by which a court of equity may rectify certain wrongs." *New Amsterdam Casualty Co. v. Waller,* 301 F.2d 839, 842 (4th Cir.1962). A constructive trust is imposed when the holder of title acquired the property through fraud, a breach of duty, or " 'some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.' " *Roper v. Edwards,* 323 N.C. 461, 373 S.E.2d 423, 425 (1988) (quoting *Wilson v. Crab Orchard Dev. Co.,* 276 N.C. 198, 171 S.E.2d 873 (1970)).

**3.** *See Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.,* 819 F.2d 1471, 1486 (8th Cir.1987) (court held that insurance policy was void *ab initio* when it was procured with the present intent to murder the insured).

"It is a 'fraud-rectifying' trust, created by a court of equity to prevent the unjust enrichment of the holder of title. The court constructs a trust, makes the defendant a trustee without his consent, for the purpose of working out the ends of justice. It is not a permanent trust, in which the trustee is to have any duties of administration, but passive, temporary trust, in which the trustee's sole duty is to transfer the title to the beneficiary."

*Tractor & Auto Supply Co. v. Fayetteville Tractor and Equip. Co.,* 2 N.C.App. 531, 163 S.E.2d 510, 517 (1968) (quoting R.E. Lee, North Carolina Law of Trusts, (3rd Ed.1968), § 13a, p. 76); *see Roper,* 373 S.E.2d at 425. Since *Tractor & Auto Supply Co.* dealt with the imposition of a constructive trust on an allegation of fraudulently obtained money, a fair interpretation would suggest that a constructive trust can be imposed on real as well as personal property. Based upon the facts of this case, however, the Court finds that a constructive trust remedy on behalf of the Estates would be inapplicable for the following reasons.

First, the notion of constructive trust involves an equitable remedy of giving back to the original holder something that was wrongfully or fraudulently taken, whether that be title to real property or some tangible or intangible personal property. If the facts in the present case indicated that either Maceo or Vela McEachern owned or possessed real or personal property which was fraudulently taken from them by Joey and Barbara Caldwell, then a fraud-rectifying device or constructive trust would be an appropriate remedy. But regrettably, the McEacherns lost their lives at the hands of Joey and Barbara Caldwell.

This was a criminal act for which Joey and Barbara Caldwell would and should have faced punishment. But for the purposes of this forfeiture proceeding, there is a missing link between the murders resulting in the deaths of Maceo and Vela McEachern for which the Estates now wish to assert a claim

against Joey and Barbara Caldwell and the government's forfeiture action against the Defendant properties. The *res* upon which the Estates desire to assert a claim against is the property which was improved or purchased with the fraudulently obtained insurance proceeds. However, the underlying fraud that serves as the basis of the government's claim against the Defendant property is that which was committed against the insurance companies. This forfeiture proceeding itself is not tied to the wrongful death claims the Estates might have.

Therefore, if the Estates were entitled to a constructive trust at all, it would not arise from the criminal act itself. But rather, it would have to be grounded upon a claim against the affected insurance companies with Joey Caldwell's estate and Barbara Caldwell as necessary parties to the action. Such a claim possibly could be based on negligence by the insurance company for failing to adequately determine the basis of Joey and Barbara Caldwell's purported insurable interest in the life of Maceo McEachern. If the Estates were successful at such a claim, then perhaps a constructive trust remedy would be available to the Estates against the insurance proceeds received as a result of Maceo McEachern's death.[4]

Of course, after determining that a civil fraud was committed, the discussion then would be who is entitled to the fruits of the insurance policy: the insurance company, Joey and Barbara Caldwell, or the Estates. However, this inquiry is not before the Court. The present facts fail to establish a direct nexus here between the Estates and the insurance proceeds. Without this connection, the Estates have no protectable interest which would justify standing to contest the government's forfeiture action pursuant to § 981.

Notwithstanding the existence a factual situation that begs for some equitable relief to the Estates because of the criminal act of Joey and Barbara Caldwell, the Court is still mindful of the federal jurisdictional require-

---

4. The Court does not hereby intend to address the merits of such a claim if it were to exist. The Court is also mindful that Maceo McEachern consented to the issuance of the insurance policy on his life to Joey and Barbara Caldwell. This may have some effect on the question of both the negligence of the insurer and the insurable interest of Joey and Barbara Caldwell.

ment that standing exists in order for a claimant to raise an objection to a forfeiture proceeding. The Estates' primary basis for their standing argument is that their interest for the purposes of standing was created when Joey and Barbara Caldwell obtained the insurance policy on the life of Maceo McEachern. They therefore seek, as indicated above, to establish a constructive trust against the insurance policy in the hands of Joey and Barbara Caldwell and the proceeds paid from it as result of Maceo McEachern's death. It is argued that this gives them some protectable interest that stands ahead of the government's forfeiture rights.

It is important to note, however, that even if the Estates had some interest on this basis, that is by and through Joey and Barbara Caldwell, the Estates' interest could be no greater than what Joey and Barbara Caldwell would possess. Even though the forfeiture proceeding is directed against the Defendant real and personal property, the legal theory that the government proceeds upon is that it can trace the proceeds from the fraudulently obtained insurance policy to Joey and Barbara Caldwell's use of the funds to improve and purchase the Defendant real and personal property.

It is clear that when the policy was purchased by Joey and Barbara Caldwell, it was done with the criminal intent to kill Maceo McEachern which would have satisfied at least one of the elements of a civil fraud. In this vein, the policy itself was legally lifeless at the time of its issuance. This also is clear because courts have held that " '[a] life insurance policy is void *ab initio* when it is shown that the beneficiary thereof procured the policy with a present intention to murder the insured.' " *Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.,* 819 F.2d at 1486 (quoting *New England Mutual Life Ins. Co. v. Null,* 605 F.2d 421 (8th Cir.1979)). Furthermore, the North Carolina Supreme Court has stated that when an instrument is procured with some fraudulent misrepresentation or pretense, "no title passes under such an instrument-it is void-and no right may be acquired thereunder even by innocent third parties...." *Furst & Thomas v. Merritt,* 190 N.C. 397, 130 S.E. 40,

43 (1925). Based upon this principle, "such a fraud, if found, would make the notes and contracts void in the hands of any holder, since they were void from the beginning...." *M. & J. Finance Corp. v. Rinehardt,* 216 N.C. 380, 5 S.E.2d 138, 141 (1939); *see Nixon v. Nixon,* 260 N.C. 251, 132 S.E.2d 590 (1963).

Again, the same is true in the instant case where the evidence clearly shows that Joey and Barbara Caldwell's intent to murder Maceo McEachern was formed at the time the policies were first taken out from Great West Life and Sun Life. After Maceo McEachern's murder, Joey and Barbara Caldwell procured the insurance proceeds in violation of 18 U.S.C. § 1957 and improved and purchased the Defendant real and personal property with the illegally obtained insurance proceeds. This is supported by Joey Caldwell's stipulation after his conviction admitting that the Defendant real and personal property was improved and purchased with the illegal insurance proceeds. (Govt's Ex. C, Stipulation of Joey Caldwell at 38–46.) The same is true for Barbara Caldwell who based upon her complicity in the murders and insurance fraud scheme, also renounced any legal interest in the Defendant property. (Barbara Caldwell's Consent to Forfeiture.)

These admissions by Joey and Barbara Caldwell only serve to highlight the law as set out in *Cerro Gordo Charity* and *Furst.* It also supports this Court's holding that the Estates can have no greater right in the insurance policy or the proceeds derived therefrom than Joey and Barbara Caldwell could have. Since their interest and the policy itself is void *ab initio,* the same is true for any interest that the Estates might have had. Therefore, the Estates do not have a valid legal claim to the insurance policy or the proceeds therefrom which would justify the existence of standing to contest the government's forfeiture proceeding.

The use of the insurance proceeds to make improvements to the Defendant real property and to purchase the other Defendant personal property are directly traceable to the illegal scheme to collect insurance proceeds from Great West Life and Sun Life. It is clear that Joey and Barbara Caldwell's crimi-

nal activity under 18 U.S.C. § 1957 made the Defendant property immediately forfeitable to the United States pursuant to 18 U.S.C. § 981. Therefore, pursuant to § 981, the government's legal interest arose at the time of Joey and Barbara Caldwell's criminal act to the exclusion of any possible wrongful death claim the Estates could have filed based upon the illegal act of Joey and Barbara Caldwell.[5] This Court, however, makes no effort to determine the merits of any claim that the Estates could have asserted against either Joey or Barbara Caldwell.

Therefore, based on the evidence presented, if the Estates have any claim at all it is related to a claim of wrongful death against Joey and Barbara Caldwell who have acknowledged their guilt and intentional acts of killing Maceo McEachern to recover insurance proceeds. Even though Vela McEachern's death was not based upon a fraudulent attempt to obtain insurance proceeds, the intentional act resulting in her death could have provided support for a wrongful death claim. Again, however, the Court makes no effort to determine the merits of such a claim since neither of the Estates have such claims before this Court.

Finally, as indicated earlier, the right of Joey and Barbara Caldwell to claim the insurance proceeds as beneficiaries was void *ab initio* since it was not only procured with an intent to murder Maceo McEachern but also fraudulently obtained in violation of 18 U.S.C. § 1957. This means that any interest that the Estates could assert would have to be based upon whatever interest Joey and Barbara Caldwell had in the insurance proceeds or any asset real or personal property which could be traced back to the insurance proceeds. However, since Joey and Barbara Caldwell cannot maintain any legal interest in the Defendant property because of their fraudulent acts, the Estates also have no interest in the Defendant real or personal property which would justify standing to object to the present forfeiture proceeding.

Therefore, for the reasons stated above, since the Estates lack standing, the government's Motion to Dismiss on the Estates' claims will also be granted.

## CONCLUSION

The Court concludes that since the Caldwells have failed to prove that they have a deed of trust or a lien on the Defendant real and personal property, they lack standing to contest the forfeiture. Furthermore, the Court also concludes that the Estates lack standing because the life insurance policy issued to Joey and Barbara Caldwell was void *ab initio* and any interest the Estates possibly could have asserted had to flow from Joey and Barbara Caldwell.

For the reasons stated herein, neither the Caldwells nor the Estates have any interest in the Defendant property to support a claim that could be asserted against the government's interest in this forfeiture proceeding. Based upon the Court's conclusion that both the Caldwells and the Estates lack standing, the Court finds that they have failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Therefore, the government's Motion to Dismiss will be granted.

---

5. In fact, the Fourth Circuit used similar reasoning in *Case of One 1985 Nissan, 300ZX: VIN JN1C214SFX069854*, 889 F.2d 1317, 1320 (4th Cir.1989), by indicating that under the relation back doctrine all right, titles, and interest in the property vested with the government at the time the proceeds were traceable to the illegal drug sales. The court reasoned that "at the time White sold the drugs, title in all proceeds passed directly to the United States. Thus, at the time of his death, White did not own the property here in question to pass to his estate or to his heirs." *Id.* at 1320. Although this case dealt with a different forfeiture statute pursuant 21 U.S.C. § 881, the court's reasoning was sound. This Court agrees and adopts that reasoning which is equally applicable to the Estates as well as the Caldwells. Since the Defendant property is immediately traceable to the insurance proceeds, the government has a valid claim against Defendant property which it could assert in the present forfeiture proceeding. This claim and title on behalf of the government existed at the time of issuance of the policy which was void *ab initio* because of the fraudulent acts of Joey and Barbara Caldwell. Joey and Barbara could not have given good title to any property obtained with the proceeds from the insurance policy. Therefore, any one claiming an interest through Joey and Barbara Caldwell could have no greater interest than that which they possessed, which this Court finds to be no interest at all.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### AMENDED ORDER

Consistent with the Memorandum Opinion and Order filed in this matter on July 25, 1995, the Court hereby amends the prior Order to correctly reflect the dismissal of only the claims filed by Floyd and Linda Caldwell, and the Estates of Maceo and Vela McEachern and not the United States' forfeiture proceeding itself.

Therefore, **IT IS ORDERED, ADJUDGED, AND DECREED** that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the United States' Motion to Dismiss the claims of Floyd and Linda Caldwell and the Estates of Maceo and Vela McEachern is **HEREBY GRANTED,** and that the respective claims as filed in this forfeiture proceeding are **HEREBY DISMISSED.**

IT IS FURTHER ORDERED that the United States of America shall proceed with the forfeiture proceeding forthwith.